[S. F. No. 21945. In Bank. June 28, 1965.]

FIBREBOARD PAPER PRODUCTS CORPORATION, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and DORMAN S. BEEZLEY, Respondents.

Brobeck, Phleger & Harrison and Rinaldo Sciaroni, Jr., for Petitioner.

Everett A. Corten and Charles W. Decker for Respondents.

PETERS, J.—Fibreboard Paper Products Corporation petitions for a writ of review of an order of respondent commission holding Fibreboard partially responsible for a temporary disability award. The award was proper.

Dorman S. Beezley, the applicant, began working for Fibreboard in June of 1961 in Stockton. On March 23, 1962, while "pulling hay," he fell off a hay wagon and landed on a "mule" (a tongue used to connect the wagon to a truck), injuring his leg and his back. On January 18, 1963, while loading bales, Beezley again injured his back. Beezley terminated his employment at Fibreboard in April of 1963. On November 13, 1963, while working for Richard Murphy, cutting and loading Christmas trees, his back again began to bother him seriously, and surgery was required soon thereafter. Beezley then filed applications against both Fibreboard and Murphy for temporary disability and medical payments.

Dr. Eugene Padel, who had performed the surgery on Beezley, testified that the Christmas tree episode alone would not have required surgery, but that it was necessitated by the cumulative effect of the three incidents. He attributed 45 per cent of the disability to the fall on March 23, 1962, 10 per cent to the lifting incident on January 18, 1963, and 45 per cent to the Christmas tree episode on November 13, 1963.

The commission's referee found that Beezley had sustained the disability as a result of his employment with both Fibreboard and Murphy and apportioned the liability for temporary disability payments and medical costs on the basis recommended by Dr. Padel: 45 per cent to the March 1962 accident, 10 per cent to January 1963, and 45 per cent to November

1963. Thus, Fibreboard was ordered to bear 55 per cent of the liability.[1] The commission denied Fibreboard's petition for reconsideration and adopted the referee's recommendation.

■ Fibreboard first contends that the commission has no power to apportion temporary disability and medical payments between successive employers. That this contention is unsound is held in our opinion in *Royal Globe Ins. Co.* v. *Industrial Acc. Com., ante,* page 60 [45 Cal.Rptr. 1, 403 P.2d 129].

■ Fibreboard next urges that the evidence does not justify an apportionment in this case. This contention must be rejected. Dr. Padel testified that the fall on March 23, 1962, "created a disc rupture, and that the subsequent episodes of pain and difficulty which he had, merely reflected the symptoms of this, and were not materially aggravating in the sense that this materially worsened the condition. Up to the time that he went to work for Murphy with the Christmas trees, and the activity of bending and lifting the Christmas trees in some way or other did apparently aggravate the situation, the disc rupture, to a point where the man was again totally disabled, . . ." Asked about the abnormal discs which he observed in X-rays before he operated on Beezley, Dr. Padel testified, "I think that they are related to the two, and possibly, three, episodes of injury which we have described here. The third one being this questionable one in January of 1963. . . ." Finally, asked what apportionment he would recommend, Dr. Padel said, "I would give 10 per cent of it to the January 1963, the remaining 90 per cent split equally between the initial episode of March 26 and the November '63." In view of this testimony, the contention of Fibreboard that this is a case "where there is uncontradicted evidence that the total temporary disability arose only because of and was entirely precipitated by one injury" is unsound. Dr. Padel's testimony shows that Beezley's final disability was due to the cumulative effect of his work for both employers (cf. *Royal Globe Ins. Co.* v. *Industrial Acc. Com., ante,* p. 60 [45 Cal.Rptr. 1, 403 P.2d 129]), and therefore apportionment was proper.[2] Where such substantial evidence is present,

---

[1]Both Fibreboard and Murphy should have been held fully liable to Beezley, and the referee's apportionment should have applied only to the employers as between themselves. We cannot cure this error, however, for Beezley has not sought review. (See *Royal Globe Ins. Co.* v. *Industrial Acc. Com., ante,* at p. 62, fn. 1 [45 Cal.Rptr. 1, 403 P.2d 129].)

[2]Unlike most cumulative injury cases, this one began with a traumatic experience (the fall). This is no reason to deny apportionment, however. Fibreboard does not make an issue of this point.

we cannot overrule the commission's determination concerning apportionment. (*Industrial Indem. Co.* v. *Industrial Acc. Com.*, 95 Cal.App.2d 443, 450 [213 P.2d 11].)

■ Fibreboard next argues that the evidence was insufficient to show that Beezley sustained a back injury on March 23, 1962. It points to Beezley's uncertainty about the month in 1962 in which he fell from the hay wagon (he thought it might have been in September, "in the most hot of the year") and the improbability that Beezley could have fallen as he described. These weaknesses in the evidence, however, are offset by other testimony. Beezley testified that he fell from a hay wagon on only one occasion, and that he hurt his back and leg at that time. Manual Deiro, Beezley's supervisor, testified that he gave first aid to Beezley for a leg wound on March 23, 1962. Deiro had prepared a memorandum on that date in which he stated that this wound occurred when Beezley slipped off a hay wagon and hit his leg on the wagon mule. George Lewright, a co-worker, testified that he saw Beezley pulling hay and then saw him lying on the mule, and that he thought that Beezley had hurt his back. Medical records in evidence also confirm the fact that Beezley's back was injured in his fall on March 23, 1962. Records of St. Joseph's Hospital in Stockton show that Beezley was hospitalized from April 4 to 10, 1962. A consulting physician recorded, "The patient reports that about a week and a half ago while at work for Fibreboard Company he fell off a wagon. . . . He struck his left leg against something causing some local pain and swelling of the left leg and he felt he twisted his back, but he said his back didn't bother him actually much until on Monday, 4-2-62, when it bothered him badly." When Beezley was later hospitalized at Dameron Hospital in Stockton in May 1962, and again in June of 1962, similar statements were taken by other physicians. When Dr. Padel testified (on April 2, 1964), he opined "that an injury apparently a year and a half or so ago, and presumably in May of 1962, created a disc rupture, . . ." This evidence sustains the finding that Beezley injured his back during his employment with Fibreboard on March 23, 1962. ■ Where such substantial evidence exists, we cannot alter a finding made by the commission. (*Douglas Aircraft, Inc.* v. *Industrial Acc. Com.*, 47 Cal.2d 903, 905 [306 P.2d 425].)

■ Fibreboard contends that the commission, by relying upon an inaccurate referee's report, was so misled as to de-

prive petitioner of a full and fair review of the record. This contention is without merit. In the referee's findings and awards, he clearly made the 45-10-45 apportionment later adopted by the commission. In his report on the decisions, he stated the same conclusion and said that he relied on Dr. Padel's testimony recommending such an apportionment. The referee *again* correctly summarized Dr. Padel's testimony on this point in his "report on continued hearing." In his "Report and Recommendation on Petition for Reconsideration," however, the referee made a mistake. Here he stated that his original findings and Dr. Padel's testimony made a *45-45-10* apportionment: 45 per cent to each of the two incidents which occurred when Beezley was working for Fibreboard and 10 per cent to the Christmas tree incident. The commission obviously saw this mistake and was not misled by it, for it adopted the referee's recommendation that his prior findings be affirmed and refused to change this after it received a letter from Fibreboard's counsel pointing out the error. The other reports of the referee and the findings and awards clearly set forth a 45-10-45 apportionment, as did Dr. Padel's testimony. All of this was before the commission, and it is presumed that the commission made its decision on the entire record before it. (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 89, 92 [199 P.2d 302].) Under these circumstances, the contention that what the commission relied upon was "so grossly inaccurate as to be false and misleading" (cf. *Power* v. *Industrial Acc. Com.,* 123 Cal.App.2d 591, 596 [267 P.2d 85]) is unsound.

As the evidence fully justifies the apportionment here involved, the award is affirmed.

Traynor, C. J., McComb, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.