[Civ. No. 11427. Third Dist. Dec. 8, 1966.]

PACIFIC EMPLOYERS INSURANCE GROUP, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, P. L. FARRIS et al., Respondents.

Mullen & Filippi, Frank J. Filippi and John A. Thompson for Petitioner.

Everett A. Corten, Sheldon St. Clair, Leep & Saunders and Henry Saunders for Respondents.

REGAN, J.—Applicant, P. L. Farris, applied for workmen's compensation benefits alleging an injury arising out of and in the course of his employment as an employee of Heron Mills, Inc. The Workmen's Compensation Appeals Board in its "Findings and Ward" found: Farris had sustained an industrial injury to his back arising out of his employment by Heron Mills, Inc., causing a total, temporary disability and, in addition, a permanent disability of 26½ percent; and that the injury is not subject to apportionment.

Pacific Employers, having been denied reconsideration, seeks by this writ of review a determination of whether the findings

and order awarding disability indemnity to Farris and denying apportionment were proper.

Farris, an employee in the lumber industry for 25 years working at jobs requiring the rolling and turning of boards, was on May 3, 1965, performing such work for Heron Mills, Inc., when he experienced pain in the lower back. Farris, who was employed by Heron Mills, Inc., since September 18, 1963, stated he had no previous back trouble; that no unusual incident had occurred on the job to cause an injury; that the pain persisted and on May 11, 1965, he consulted Thomas R. Fowler, M.D., who referred him to Eugene A. Nutley, M.D., an orthopedic surgeon. While being treated by Dr. Nutley, Farris continued to work until July 11, 1965, when he was hospitalized for a course of bed rest, traction, physical therapy, and had a low back brace fitted, which Farris continued to wear after hospitalization. Dr. Fowler, in his report, asserted Farris stated to him that he had strained his back on the ''green chain.''

Dr. Nutley, in his first report to petitioner, stated: ''I am not too sure as to the exact diagnosis. It is hoped that this is merely a low back strain, which will subside with rest. However, he does seem to localize his distress in an area in his back which seems to have either some degenerative changes or some type of congenital anomaly.''

Some four months later, Dr. Nutley, reporting to the Department of Rehabilitation, stated: ''Pervie Farris has a markedly degenerated lumbosacral disc and can no longer perform work envolving [sic] heavy lifting and bending. Please evaluate re change of occupation.''

In his later report to Pacific Employers, Dr. Nutley stated: ''This man presents a clinical picture of degenerative lumbosacral disc disease at this time. This is confirmed by X-rays and the X-rays show fairly far advanced disease. This man feels he is no longer to pursue his prior occupation involving heavy lifting and bending and considering his X-rays, he probably is not able to do this any longer. This man also denies having had any back trouble prior to May of this year. . . . In general, I feel this man has reached an essentially stationary state and it is possible he could be rated at this time on the basis of a back impairment preventing repeated heavy lifting and bending. The X-rays show pre-existing disease which I feel would be responsible for 50% of his present impairment.''

Pursuant to the request of Pacific Employer's claims examiner, Francis J. Cox, M.D., examined Farris and commented as follows: "This man's disability is due to degenerated disc disease and the marked narrowing and osteoarthritic change at the last functioning disc. This condition has been coming on slowly over a long period of time. . . . There is no specific history of any specific injury in this picture. I simply think that the man's back became painful at a given point in time, and not the result of any specific injury. The years of work he did in part play some responsibility to the present situation obviously. . . . The man's sole disability on apportionment should be attributed to his basic underlying progressive degenerative disc disease."

On February 9, 1966, the referee decided that the applicant had suffered a compensable industrial injury, that the injury caused permanent disability of 26½ percent, and that the injury was not subject to apportionment. In his report to the Workmen's Compensation Appeals Board, the referee commented as follows:

"Applicant testified that on May 3, 1965, he was trimming lumber and the lumber piled up on the roll casing. He was moving and turning boards on the roll casing to get them to the trim saws and at approximately 11 :00 a.m. felt discomfort in his low back and left side. He continued working, and continued to work after seeking medical attention, and worked until his back condition was such that he was hospitalized. There was no evidence from the employer that they had not received notice of the injury; in fact, the record indicates the employer was aware of the injury and a back strain was diagnosed and applicant received conservative treatment while he continued to work. The medical reports and applicant's testimony indicate there was a specific incident of trauma on May 3, 1965.

". . . The medical reports indicate employee has a fairly advanced lumbosacral disc disease, however, employee had no prior injury and was asymptomatic as far as his back was concerned for many years prior to the injury. He had no back disability for 28 years prior to the traumatic incident herein, and for 12 to 13 years prior to the incident he had been working in a sawmill as an edgerman or trimmerman. The degenerative disc disease was a condition and not a disability and did not impair employee's ability to work, so the award was not apportioned."

In denying reconsideration, the appeals board commented as follows:

"The history accepted by the Trial Referee was that there had been no prior symptoms of the back before this industrial trauma on May 3, 1965 and there is no compelling medical evidence that the degenerative disc condition would have progressed to a symptomatic condition by May 3, 1965, or at any ascertainable future date without the industrial injury. Therefore, no apportionment is indicated on this record."

### Is There Substantial Evidence to Justify the Finding That Farris Incurred an Industrial Injury?

"When a finding of fact of the Industrial Accident Commission is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Douglas Aircraft, Inc.* v. *Industrial Acc. Com.*, 47 Cal.2d 903, 905 [306 P.2d 425].) An award will be annulled only in the absence of substantial evidence to support it, and the court will indulge all reasonable inferences which may be drawn from the record to sustain the commission's findings. (*Leonard Van Stelle, Inc.* v. *Industrial Acc. Com.*, 59 Cal.2d 836, 839 [31 Cal.Rptr. 467, 382 P.2d 587] ; Lab. Code, § 5952.)

" '. . . It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made. *The substantial question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause.* In the former case, no award can be made; in the latter, it ought to be made.' [Citation.]" (*Beveridge* v. *Industrial Acc. Com.*, 175 Cal.App.2d 592, 598 [346 P.2d 545].)

In effect, the fact finder was here confronted with a choice between disease and employment as a proximate contributing cause of back disability. (See *Peter Kiewit Sons* v. *Industrial Acc. Com.*, 234 Cal.App.2d 831 [44 Cal.Rptr. 813].)

The doctors do not state directly in their reports that Farris suffered an industrial injury while working, but there is an inference that this was the case, for Dr. Fowler states that Farris "strained his back on the green chain." Dr. Nutley ascribes only 50 percent of the impairment to the preexisting disease, and Dr. Cox makes note that the years of such work

did in part play some responsibility. The medical testimony thus establishes a causal relationship between the work and disability on the basis of medical evidence. ▮ ''All reasonable inferences must be indulged to support the findings of the commission; reasonable probability, not absolute certainty, is all that is required. [Citation.] . . . Each case must be considered upon its own particular facts. . . .'' (*Pacific Indem. Co.* v. *Industrial Acc. Com.*, 28 Cal.2d 329, 339 [170 P.2d 18].)

▮ Moreover, it is the rule in California ''that the acceleration, aggravation or 'lighting up' of a preexisting disease is an injury in the occupation causing the same. [Citations.] The underlying theory is that the employer takes the employee subject to his condition when he enters the employment, and that therefore compensation is not to be denied merely because the workman's physical condition was such as to cause him to suffer a disability from an injury which ordinarily, given a stronger and healthier constitution, would have caused little or no inconvenience.'' (*Tanenbaum* v. *Industrial Acc. Com.*, 4 Cal.2d 615, 617 [52 P.2d 215].)

Petitioner, however, cites the case of *Peter Kiewit Sons* v. *Industrial Acc. Com.*, *supra*, 234 Cal.App.2d 831, decided by this court in 1965, as controlling on the issue in question. In *Kiewit* this court stated at page 838: ''Where an issue is exclusively a matter of scientific medical knowledge, expert evidence is essential to sustain a commission finding; lay testimony or opinion in support of such a finding does not measure up to the standard of substantial evidence. (*City & County of San Francisco* v. *Industrial Acc. Com.*, *supra*, 117 Cal.App.2d at pp. 459-460 [256 P.2d 81]; *Guarantee Ins. Co.* v. *Industrial Acc. Com.*, 88 Cal.App.2d 410, 413 [199 P.2d 12]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 47 Cal.App.2d 494, 500-501 [118 P.2d 334].)''

This court also notes that ''back disabilities in particular shout loudly for expert advice.'' (At p. 839.) In *Kiewit*, however, there was no competent medical evidence of work causation. Furthermore, the evidence in that case pointed to four possible sources, which combined or separately, resulted in the employee's inability to work. Thus the instant case is distinguishable on the facts.

▮ We hold there is substantial evidence to sustain the finding that a compensable industrial injury was incurred by Farris.

WAS APPORTIONMENT BETWEEN THE INDUSTRIAL INJURY
AND THE PREEXISTING DISEASE PROPERLY DENIED?

 Having determined that Farris did sustain injury causing permanent disability arising out of and in the course of his employment by Heron Mills, we now turn to petitioner's contention that the facts in this case make it mandatory that the permanent disability be apportioned pursuant to the provisions of section 4663 of the Labor Code.

The Workmen's Compensation Appeals Board in adopting by reference the report of the trial referee, which is supported by substantial evidence, found that Farris had worked in sawmills all of his adult life and had no prior back injuries or disability; that there was a specific incident of trauma on May 3, 1965; that Farris had a fairly advanced lumbosacral disc disease; that he was asymptomatic for many years prior to his injury; that the degenerative disc disease was a condition and not a disability until the event of the injury and did not impair Farris' ability to work. Dr. Nutley, however, ascribed 50 percent of the impairment to the preexisting disease.

 We now look to *Idaho Maryland etc. Corp.* v. *Industrial Acc. Com.*, 104 Cal.App.2d 567, 570 [232 P.2d 11], where the court states: ". . . [S]ince respondent determined upon conflicting and substantial evidence that the claimant's disability was an industrial injury occasioned by exposure to gas which aggravated a preexisting disease, there is no basis for the application, as petitioner contends, of the apportionment rule as set forth in Labor Code, section 4663. As the Supreme Court stated in *Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79, 83-84 [172 P.2d 884] : '[T]hat section must be read in light of the rule that an employer takes the employee as he finds him at the time of employment and when subsequent injury lightens up or aggravates a previously existing condition rendering it disabling, liability for the full disability without proration is imposed upon the employer.' "

In *Argonaut Ins. Co.* v. *Industrial Acc. Com.*, 57 Cal.2d 589, 593 [21 Cal.Rptr. 545, 371 P.2d 281], the court (per Traynor, J.) stated: "Whether a disability results in whole or in part from 'the normal progress of a preexisting disease' [Citation] or represents a fully compensable lighting up or aggravation of a preexisting condition is a question for the commission to determine, and its award will not be annulled if there is substantial evidence to support it. [Citations.] In view of the foregoing testimony the commission could reasonably conclude

that the preexisting condition did not call for apportionment.''

In view of the substantial evidence brought forth in this case, the appeals board could and did reasonably conclude that the preexisting condition did not call for apportionment. (See *Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 57 Cal.2d 589; *Idaho Maryland etc. Corp.* v. *Industrial Acc. Com., supra,* 104 Cal.App.2d 567; see also *W. P. Fuller & Co.* v. *Industrial Acc. Com.,* 211 Cal.App.2d 9 [27 Cal.Rptr. 401]; *Industrial Indem. Co.* v. *Industrial Acc. Com.,* 95 Cal.App.2d 443, 452 [213 P.2d 11].)

The award is affirmed.

Pierce, P. J., and Friedman, J., concurred.