[Civ. No. 32974.   Second Dist., Div. Three.   Sept. 27, 1968.]

CYPRESS INSURANCE COMPANY, Petitioner, v. WORK-MEN'S COMPENSATION APPEALS BOARD, ARLO E. DELANEY et al., Respondents.

McConnell & Cramoline and Douglas Murray for Petitioner.

Everett A. Corten and Nathan Mudge for Respondents.

McCOY, J. pro tem.*—This is a proceeding by an insurance carrier to review and annul an award of temporary disability benefits, reimbursement for self-procured medical treatment, further medical treatment, and medical-legal costs.

The applicant, Arlo E. Delaney, a heavy equipment operator, moved from La Puente to Bakersfield to work as a "blade operator" on a job for Peter Kiewit Sons & Co. on the Feather River Project. His job involved turning over and grading the earth with a machine which created clouds of dust. He worked for Kiewit from February 4, 1965, to October 8, 1965. He was hospitalized briefly and his condition was diagnosed as either dust pneumonia or valley fever. On January 5, 1966, while still under a doctor's care, he went to work on a similar job in the area for Asbury Contractors, which was insured by petitioner. Water at this location kept the dust down except for two occasions when dust storms compelled work stoppage. Applicant terminated this employment with Asbury on February 22, 1966, because of cough and chest pain. His cough was somewhat relieved by medication. On March 16, 1966, he went to work for Granite Construction Company on a similar job in the area although his cough and chest pain remained. This work ended on April 8, 1966. From April 19 to 26, 1966, he worked for another employer at a dustless job on a paved area. He became completely disabled on the latter date. In May 1966 applicant's left lung was surgically removed. Medical evidence agrees that he suffers from San Joaquin Valley Fever (coccidioidomycosis).

On his claim for workmen's compensation benefits the referee found that he sustained industrial injury during his entire period of employment for Kiewit, Asbury and Granite; that the injury caused temporary disability from October 7, 1965, through January 4, 1966, from February 22, 1966, through March 14, 1966, from April 9 through April 18, 1966, and from April 27, 1966, to the present and continuing thereafter. The referee computed the total days of employment by the three employers (315) and assigned a proportionate percentage of the whole to each employment. She then apportioned liability for temporary disability indemnity of $70 a week on the basis of these percentages.[1] An award issued

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Paragraphs 3 and 4 of the referee's findings of fact, read: "3. Applicant's disability is apportioned between the defendant insurance carriers, based upon the number of days' exposure during the respective coverage periods as follows:

accordingly against each insurer of temporary disability indemnity at different rates per week for each of the three periods: from October 7, 1965, through January 4, 1966; from February 22 through March 14, 1966; and from April 9 through April 18, 1966, and continuing thereafter beginning April 27, 1966, during the period of continuing temporary disability. The awards against each of the carriers included reimbursement for self-procured medical treatment and for medical-legal costs, together with lifelong medical treatment. The board denied reconsideration.

The medical evidence was comprised of voluminous medical reports and records and the testimony of five doctors. The medical experts agreed that the disease is caused by inhalation of air-borne spores which cause a pulmonary infection; that the period of incubation between inhalation of spores and symptoms is from one to three weeks; symptoms may not appear at all if the infection is not severe; the disease may progress by the self-reproduction of the damaging spores in the lungs (endogenous reinfection) or from new inhalation of additional spores (exogenous reinfection); that the infection may lie dormant or it may subsequently flare up; that the harmful spores become air-borne when top soil is stirred; that the areas in which the applicant worked between February 4, 1965, and April 8, 1966, were highly endemic; and that his work as an earth moving equipment operator particularly exposed him to the spores. In effect the decision is based on a

| Carrier | Days of Coverage | Per Cent | Temporary Disability Payments |
|---|---|---|---|
| Aetna Casualty & Surety Co. (February 4, 1965 through October 8, 1965) | 245 | .778 | $54.46 |
| Cypress Insurance Co. (January 5, 1966 through February 22, 1966) | 49 | .155 | $10.85 |
| Argonaut Insurance Co. (March 16. 1966 through April 8, 1966) | 21 | .067 | $ 4.69 |
| Totals . . . . | 315 | 1.000 | $70.00 |

''4. This injury caused continuing temporary total disability beginning October 7, 1965 through January 4, 1966; again beginning February 22, 1966 through March 14, 1966; again beginning April 9, 1966 through April 18, 1966; and again beginning April 27, 1966 to the present and continuing thereafter for which indemnity is payable at $70.00 per week. The liability for temporary disability is to be borne by the parties defendant in the same proportion as their respective liability for the periods of exposure as provided in Finding No. 3.''

finding that ultimate disability was the result of exposures over the broken periods of employment totaling 315 days.

■ Petitioner contends that the disease is contracted at a specific time and since the referee found that it was contracted before the employment for which petitioner is liable, the decision is not supported by the evidence and is unreasonable.[2]

It is obvious that in this case the cause and extent of applicant's disability is a medical question. Admittedly, the medical evidence here is conflicting. As the referee said in her opinion on decision, "to state the problem contributes in no manner to its solution. Each of the doctors produced by the vying parties has testified learnedly, at great length, employing highly scientific and obscure medical terminology, citing numerous research projects and studies in the disease and analyzing the innumerable laboratory tests administered this applicant; but the ultimate result of the tremendous body of testimony is to create a deep chasm of medical conflict. . . ." Faced with this conflict, it was the duty of the board to choose from this mass of evidence that part which seemed most persuasive. (*Foster* v. *Industrial Acc. Com.*, 136 Cal.App.2d 812 [289 P.2d 253].) ■ Our function is limited to a determination of whether there is substantial evidence, whether contradicted or not, to sustain the findings of the board. (*Pacific Employers Ins. Group* v. *Workmen's Comp. App. Bd.*, 247 Cal.App.2d 102, 106 [55 Cal.Rptr. 176].)

■ No extended discussion of the evidence is necessary. In his report of June 14, 1966, Dr. Morris Fier, who performed the pnemonectomy in May 1966, says: "Certainly, with Mr. Delaney's occupation, an operator of heavy equipment doing earth moving in Bakersfield, there is no question in my mind as to the relationship of his work with the infection. It is a well-known fact that coccidioidomycosis is endemic in the Bakersfield area and it is particularly related to stirring up of earth and dust. There would be no question in anybody's mind as to the relationship of his work and the

---

[2]In her opinion on decision the referee sums up the contentions of the parties as follows: "The vital thrust of the dispute and the one upon which the parties defendant mustered their big guns in the form of not only five to six pounds of medical reports and records but the testimony adverted to above of some five doctors is that each of the defendant employers involved contend that the applicant contracted the disease while in the employ of one or more of the defendant employers *except* [italics added] itself and thus that each is wholly free of any liability for workmen's compensation benefits to this applicant."

development of the disease." This evidence is corroborated by Dr. Reginald Smart in his report of July 19, 1967. As to the time of the infection Dr. Robert Huntington, the pathologist at Kern County General Hospital, testified that the lesion could have started anywhere between fifteen months and three months before the removal of applicant's lung.

In *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.*, 68 Cal. 2d 569 574 [68 Cal.Rptr. 164, 440 P.2d 236], the Supreme Court observed that compensable injuries generally fall into four categories: (1) Specific injuries incurred as the result of one incident or exposure, the effects of which are immediately realized or realizable; (2) injuries suffered as the result of a specific incident or exposure but which have latent effects; (3) continuous cumulative traumatic injuries suffered over a period of time; and (4) cumulative injuries such as silicosis resulting from continuous exposure to harmful substances. In the present case it appears that the evidence would support a conclusion that the injury here properly falls in both categories 2 and 4. In other words, the injury is cumulative, like silicosis, because it may become progressively worse from reinfection on new exposures and yet, once contracted, it may become progressively worse because of the self-reproduction of the spores originally inhaled and, thus, it may be classified as an injury suffered as the result of a specific exposure which has latent effects. In our opinion there is substantial evidence to support the finding that the exposure during the several periods of employment was the cause of applicant's disability.

Petitioner argues that, even assuming it is chargeable with some liability, it is unreasonable to hold it liable in proportion to the 49 days of its employment period when it was shown that it was only dusty on two of those days. This argument is not tenable. There is substantial medical evidence that the total period of applicant's employment by Asbury contributed to his disability. There is also evidence that during his employment by Asbury he operated earth moving equipment in an endemic area, and, although the earth was watered down, some dust arose from the freshly turned soil, and that on two days it was necessary to shut down the work because of wind-borne dust. Whether petitioner's liability as between itself and the carriers for the other two employers should be measured by the full period of applicant's employment by Asbury, or by the two days on which it was dusty, can be settled in appropriate proceedings to apportion the liability of each of the three carriers. It cannot be settled in

this proceeding in which the other two carriers are not before the court.

Where subsequent temporary disability is due to the cumulative effect of specific traumatic injuries in three different employments, apportionment is proper on the basis of medical opinion as to the percentage attributable to each of the three specific injuries. (*Fibreboard Paper Products Corp.* v. *Industrial Acc. Com.*, 63 Cal.2d 65, 69 [45 Cal.Rptr. 5, 403 P.2d 133].) The evidence here is sufficient to support the finding that the applicant was subjected to harmful conditions during the entire period of employment by Asbury. In our opinion the appropriate method of apportionment in this case is that used in the silicosis cases.

Petitioner contends that it is unreasonable to hold it liable for temporary disability benefits of $10.85 per week for the period of temporary disability between October 7, 1965, and January 4, 1966, since the applicant did not go to work for Asbury until January 5, 1966.

In silicosis cases proof that the employee was exposed to dust while employed by a particular employer is sufficient to show that this employment was a contributing factor, and the full award may be made against such employer, despite the fact that similar exposure took place during previous employments. (*Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79, 83 [172 P.2d 884]; *Industrial Indem. Exchange* v. *Industrial Acc. Com.*, 87 Cal.App.2d 465, 467 [197 P.2d 75].) In the *Colonial* case the court said (p. 82): ''We believe the more workable and fairer rule to be in progressive occupational diseases, that the employee may, at his option, obtain an award for the entire disability against any one or more of successive employers or successive insurance carriers if the disease and disability were contributed to by the employment furnished by the employer chosen or during the period covered by the insurance even though the particular employment is not the sole cause of the disability. To require an employee disabled with such a disease to fix upon each of the carriers or employers the precise portion of the disability attributable to its contribution to the cause of the malady is not in consonance with the required liberal interpretation and application of the workmen's compensation laws. The successive carriers or employers should properly have the burden of adjusting the share that each should bear and that should be done by them in an independent proceeding between themselves.'' (See, also, Lab. Code, § 5500.5.)

In *Royal Globe Ins. Co.* v. *Industrial Acc. Com.*, 63 Cal.2d 60 [45 Cal.Rptr. 1, 403 P.2d 129], the referee found that the applicant's disability was attributable to his entire period of employment by two employers. The referee awarded temporary disability and medical expenses against the carrier for the second employer, and ordered the carrier for the first employer to reimburse the carrier for the second employer in proportion to the number of months during which applicant had worked for each employer. The court there held that it was proper to hold the last employer fully liable for the applicant's temporary disability, leaving it to the carriers to adjust the share that each should bear in an independent proceeding between themselves. ''The conclusion is inescapable,'' said the court (p. 64) ''that apportionment of temporary disability among carriers should be required in 'cumulative injury' cases.'' Since the carrier for the first employer did not seek review, the award was affirmed insofar as the employee was concerned, and the matter remanded to the commission with directions to make a proper apportionment between the two carriers. The same conclusion was reached in *Fibreboard Paper Products Corp.* v. *Industrial Acc. Com.*, 63 Cal.2d 65 [45 Cal.Rptr. 5, 403 P.2d 133], decided the same day. In the latter case the court held that where the evidence showed, and the commission found, that the applicant's temporary disability was due to the cumulative effect of his work for both employers, apportionment was proper. In both of these cases the cumulative injury began with a traumatic experience.

In view of the cases just discussed, petitioner's liability for the period between October 7, 1965, and January 4, 1966, can be settled in appropriate apportionment proceedings, but cannot be settled here.

In our opinion the award must be affirmed insofar as the employee is concerned. Since all three insurance carriers have been held fully liable' for the award, ''the employee is not required to wait until the resolution of the apportionment problem to get his money. . . . As between the carriers, fundamental rules of fair play require apportionment.'' (*Royal Globe Ins. Co.* v. *Industrial Acc. Com., supra,* 63 Cal.2d at p. 64.)

The award is affirmed insofar as the applicant is concerned, and the matter is remanded to the board with directions to make a proper apportionment between the three carriers.

Ford, P. J., and Moss, J., concurred.