[Civ. No. 41662. Second Dist., Div. Three. Nov. 15, 1973.]

AETNA CASUALTY AND SURETY COMPANY et al., Petitioners, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
ALVIN H. COLTHARP et al., Respondents.

## COUNSEL

Kendig, Stockwell & Gleason, William H. Anderson, Mansell & Giddens and Zonni, Ginocchio & Taylor for Petitioners.

Franklin O. Grady, Sheldon C. St. Clair, Thompson, Talbott & Lemaster, George D. Thompson, Parker & Dally and John F. Parker for Respondents.

## OPINION

**THE COURT.**—Petitioners, Aetna Casualty and Surety Company ("Aetna"), Industrial Indemnity Company ("Industrial"), Pacific Employers Insurance Company ("Pacific") and Argonaut Insurance Company ("Argonaut"), seek review of an order denying reconsideration, filed by the Workmen's Compensation Appeals Board ("WCAB") on January 5, 1973, and annulment of an award issued by the board in favor of applicant, Alvin H. Coltharp, on November 16, 1972.

Applicant commenced workmen's compensation proceedings by filing five applications for adjudication of claim, all of which alleged that he sustained back, hips and legs injuries arising out of and in the course of his employment. In one of the applications, it was alleged that the applicant suffered a single cumulative injury during the period of his employment, and in the remaining applications it was claimed that applicant suffered separate specific injuries in 1954, in 1966, in March of 1969 and on August 27, 1969. The pertinent substance of each application is more particularly set forth in the margin.[1]

With respect to the alleged specific injury claims, as set forth in case Numbers 70 POM 16985, 70 POM 16986 and 69 POM 15905 and relating to the incidents alleged to have occurred in 1966, in March of 1969 and on August 27, 1969, respectively, the WCAB ordered that the applicant take nothing upon the ground that he "did not sustain an injury arising out of and occurring in the course of his employment" on any of such dates. The remaining specific injury claim, designated as case Number 70 POM 16984 and relating to the injury which was alleged to have occurred in 1954, was ordered dismissed without prejudice on March 14, 1972.

Notwithstanding the take-nothing and dismissal orders arising out of the cases involving specific injury claims, the referee issued an award in applicant's favor in case Number 70 POM 16987, relating to his repetitive trauma claim. In an "Opinion on Decision" that was filed in case Number 70 POM 16987, the referee stated, in pertinent part, as follows: ". . . applicant sustained an injury to his back for the period of employment from January 8, 1947 to August 27, 1969. Said injury arose out of and occurred in the course of his employment." The referee determined that, during such period, the applicant was employed as a quality inspector at Irwindale, California, by the same employer "although the name of the

---

[1]The following applications were filed: (1) On March 3, 1970 (case No. 70 POM 16984), alleging injury in 1954: "Carrying pipe to test . . . when dropped by fellow employee"; (2) On March 3, 1970 (case No. 70 POM 16985), alleging injury in 1966: "Slipped and fell on rod butt"; (3) On March 3, 1970 (case No. 70 POM 16986), alleging injury in March of 1969: "Dressing ends of large diameter pipe, bent over, unable to straighten back"; (4) On or about October 16, 1969 (case No. 69 POM 15905), alleging injury on August 27, 1969: "Inspecting pipe . . . [and] fell on a walk in plant"; and (5) On March 3, 1970 (case No. 70 POM 16987), alleging injury from January 1, 1954, to and including August 27, 1969, by reason of "repetitive trauma to the back, hips and legs from continuous bending, lifting and stress occuring [sic] in the course of employment."

The period of injury with respect to the claim in case Number 70 POM 16987 was subsequently amended to read from January of 1947 to August 27, 1969.

entity changed during this period," that compensation insurance coverage was supplied by Pacific, Industrial, Aetna and Argonaut at various times during the period of January 8, 1947, through March 1, 1968 and that, at all pertinent times subsequent to March 1, 1968, such insurance was supplied by Ameron, Inc. ("Ameron"), permissibly self-insured. Based upon a specific finding that disability had "not yet become permanent" and that "[t]his injury caused temporary disability through April 28, 1969 for which applicant has been fully compensated, and again beginning August 27, 1969 to September 20, 1972 and thereafter . . ." the referee issued a joint and several award[2] against Pacific, Industrial, Aetna, Argonaut and Ameron for "temporary disability indemnity of $87.50 per week, beginning August 27, 1969 to September 20, 1972, and weekly thereafter during the continuance of temporary disability . . . ."

Subsequent to the date that the findings and award in case Number 70 POM 16987 issued, petitions for reconsideration were filed by Aetna and Industrial on December 7, 1972, and by Pacific and Argonaut on December 12, 1972. The primary issue raised by the petitions for reconsideration and for review herein centers upon whether Labor Code sections 3208.1, 3208.2 and 5303 apply to the facts presented in this proceeding and, if so, whether such provisions were given proper recognition and application by the WCAB.

Sections 3208.1 and 3208.2 were enacted by the Legislature in 1968 and became operative on January 1, 1969. (Stats. 1968, First Ex. Sess., ch. 4, §§ 1 and 2, p. 31.) Section 5303 was amended in 1968, such amendment becoming operative on January 1, 1969. (Stats. 1968, First Ex. Sess., ch. 4, § 10, p. 34.) Section 3208.1 provides as follows: "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment; provided, however, that the date of cumulative injury shall be the date of disability caused thereby."

---

[2]The award was adjusted by reason of unemployment compensation disability benefits that had been paid by the Department of Human Resources Development and also made provision for further medical treatment and for reimbursement for the expense of self-procured medical treatment and medical legal costs.

In addition, the referee ordered that, "subject to the right of reimbursement from the codefendants," Ameron was primarily responsible for satisfaction of the award and that issues relating to, among other things, permanent disability and apportionment between carriers were taken off calendar subject to being reset upon request of any of the parties.

Section 3208.2 provides: "When disability, need for medical treatment, or death results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including, but not limited to, the apportionment between such injuries of liability for disability benefits, the cost of medical treatment, and any death benefit." Finally, section 5303 provides as follows: "There is but one cause of action for each injury coming within the provisions of this division. All claims brought for medical expense, disability payments, death benefits, burial expense, liens, or any other matter arising out of such injury may, in the discretion of the appeals board, be joined in the same proceeding at any time; provided, however, that no injury, whether specific or cumulative, shall, for any purpose whatsoever, merge into or form a part of another injury; nor shall any award based on a cumulative injury include disability caused by any specific injury or by any other cumulative injury causing or contributing to the existing disability, need for medical treatment or death."[3]

The Legislative Committee comment with respect to the enactment of sections 3208.1 and 3208.2 and the amendment of section 5303 is as follows: "To nullify the effect upon the law of Workmen's Compensation of certain recent decisions of the Court of Appeal and of the Supreme Court, including Dow Chemical Co. vs. Workmen's Compensation Appeals Board, 67 AC 488 [67 Cal.2d 483 (62 Cal.Rptr. 757, 432 P.2d 365)], De Luna vs. Workmen's Compensation Appeals Board, 258 ACA 271 [258 Cal.App.2d 199 (65 Cal.Rptr. 421)], Miller vs. Workmen's Compensation Appeals Board, 258 ACA 589 [258 Cal.App.2d 490 (65 Cal.Rptr. 835)], and Fruehauf Corporation vs. Workmen's Compensation Appeals Board, 252 ACA 600 [60 Cal.Rptr. 718] . . . ."

In urging that the award be annulled, petitioners contend that, because the incidents of March 1969 and August 27, 1969, occurred at a time subsequent to the effective date of the new and amended legislation, the WCAB was compelled to apply such legislation and that, had the legislation been properly applied, the determination that the applicant sustained a single cumulative injury to his back for the period of employment from January 8, 1947, to August 27, 1969, would not have been warranted by the evidence. In short, the petitioners urge that since each of the occur-

---

[3]The proviso set forth in section 5303 was added by the Legislature in 1968. (See Historical Note, which accompanies the recitation of section 5303 in the Labor Code; see also, Swezey, *Repetitive Trauma as Industrial Injury in California* (1970) 21 Hastings L.J. 631, 640.)

rences in 1969 resulted in a need for medical treatment and in disability, the WCAB was required, pursuant to Labor Code sections 3208.1 and 3208.2, to find that each such occurrence was a separate injury to be "separately determined" with respect to all issues and that, pursuant to section 5303, the merger of such injuries was proscribed.

In reaching a determination that the petitions for reconsideration should be denied, the WCAB relied upon the referee's "Report and Recommendation on Petition for Reconsideration" which, in part, provided as follows: "The evidence . . . overwhelmingly supported the fact that applicant's present disability and need for further medical treatment resulted from his entire period of employment and not from any specific injury. The applicant testified that he had numerous incidents of injury while employed by the defendant . . . . The evidence supported the fact that applicant first started having back problems in 1948 and over the years it became gradually worse until it culminated in applicant's present disability. The specific incidents applicant recalled and filed on were clearly an aggravation of a pre-existing condition that started in 1948." The referee concluded that the lay and medical evidence substantially supported the finding of "a cumulative trauma injury."

Given the referee's determination that the applicant sustained a cumulative injury for the period of January 8, 1947, to August 27, 1969, the initial issue with which we are confronted is whether the new and amended legislation, which became effective on January 1, 1969, is applicable in regard to an injury which the referee found to have commenced prior to the operative date of such legislation and to have culminated in disability subsequent to that date. In *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.,* 1 Cal.App.3d 812, 814, 820 [82 Cal.Rptr. 102], a matter which involved claims by a bus driver that he sustained a specific industrial injury to his back in February of 1962 and a cumulative industrial injury to his back from February of 1962 to July 21, 1966, the court held that sections 3208.1, 3208.2 and 5303 "have only prospective effect" and were therefore inapplicable to the facts presented in that case. Since the claimed cumulative industrial injury involved in the *State Comp. Ins. Fund* case culminated in disability prior to the operative date of the new and amended legislation, the holding therein does not squarely apply to the facts presented in the instant proceeding.

Before stating our determination as to the applicability of the new and amended legislation, we note that, had the incidents of March 1969 and August 27, 1969, occurred prior to the operative date of such legislation,

the pre-1969 law would have supplied some theoretical basis upon which to premise a conclusion that such incidents, even if deemed to be "specific" injuries, could be merged into a single cumulative injury. With this proposition the petitioners appear to be in agreement. In *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.App.3d 812, 817-818, the court stated as follows: "The case law prior to January 1, 1969, held that a single cumulative injury could be found based upon an employment period embracing several specific work-related incidents which themselves caused time lost from work or the need for medical treatment. Thus, even though a portion of the employee's ultimate disability was established to have been caused by a specific incident within the employment period, which was otherwise barred by the statute of limitations, the employee nevertheless could obtain full recovery because the specific incident was deemed merged into the cumulative injury. (*De Luna* v. *Workmen's Comp. App. Bd.,* 258 Cal.App.2d 199 [65 Cal.Rptr. 421]; *Miller* v. *Workmen's Comp. App. Bd.,* 258 Cal.App.2d 490 [65 Cal.Rptr. 835].) A cumulative injury could have its inception in a specific incident followed by work-connected aggravations, exacerbations, or flare-ups of the employee's condition as initially caused by the specific incident, together with a series of specific incidents superimposed upon the daily strains of continuous work. The fact that a single incident within the period of employment exposure might itself have caused compensable disability did not *ipso facto* preclude a finding that the single incident was but a part of and merged with the entire period of employment exposure giving rise to the cumulative injury. (*Fibreboard Paper Products Corp.* v. *Industrial Acc. Com.,* 63 Cal.2d 65 [45 Cal.Rptr. 5, 403 P.2d 133].) Moreover, prior adjudication of specific injuries did not preclude a finding of cumulative injury during a period overlapping the specific injuries. (*Dow Chemical Co.* v. *Workmen's Comp. App. Bd.,* 67 Cal.2d 483 [62 Cal.Rptr. 757, 432 P.2d 365].)"

Notwithstanding the apparent validity of the merger concept as a part of the pre-1969 law as enunciated in *De Luna* v. *Workmen's Comp. App. Bd.,* 258 Cal.App.2d 199 [65 Cal.Rptr. 421], and *Miller* v. *Workmen's Comp. App. Bd.,* 258 Cal.App.2d 490 [65 Cal.Rptr. 835], the law, as it then existed, was not without apparent ambiguity.[4] Nonetheless the court in *State Comp. Ins. Fund* v. *Workmen's Comp App. Bd., supra,* 1 Cal.App.

---

[4]For a discussion of certain of the apparent inconsistencies in the law as it existed prior to January 1, 1969, see *Chavez* v. *Workmen's Comp. Appeals Bd.,* 31 Cal. App.3d 5, 8-9, 13-14 [106 Cal.Rptr. 853], and particularly footnotes 2 and 8 of that opinion; Swezey, *Repetitive Trauma as Industrial Injury in California* (1970) *supra,* 21 Hastings L.J. 631, 639-642; Basile, *Judicial Philanthropy Curbed: A New Statutory Scheme for Cumulative Injury Awards* (1968) 9 Santa Clara Law. 156, 157-162; Herlick, Cal. Workmen's Compensation Law (1970), pp. 6-7.

3d 812, 817-820, while holding that the new and amended legislation was not to be given retroactive effect, appeared to recognize that the rules enunciated in *De Luna* v. *Workmen's Comp. App. Bd., supra,* 258 Cal.App.2d 199, and *Miller* v. *Workmen's Comp. App. Bd., supra,* 258 Cal.App.2d 490, correctly set forth the law as it existed prior to the operative date of such legislation. (See Swezey, *Repetitive Trauma as Industrial Injury in California* (1970) *supra,* 21 Hastings L.J. 631, 640-641, fn. 74.) Accordingly, we hold herein that, at least with respect to the incidents occurring prior to January 1, 1969, the rules enunciated in *De Luna* and *Miller* apply and, upon the application of such rules, conclude that the record contains sufficient evidence to support a determination that between January 8, 1947, and the effective date of the new and amended legislation, the applicant was subjected to a cumulative injury caused by the repetitive strains of lifting and other heavy labor during the course of employment. (See *Lundberg* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 436, 439 [71 Cal.Rptr. 684, 445 P.2d 300].) Some of the evidence upon which we place reliance in reaching this determination is set forth in the margin.[5]

---

[5] The applicant testified that, at the time he commenced his employment in January of 1947, his back, hips and legs were in "excellent condition" and that his employment then involved "heavy labor," such as "lifting heavy sheets of steel, handling heavy pipe by hand." The applicant also testified that in or about 1952 or 1953 he worked with 5,000-pound pipe which was placed on racks that he rolled and that, at times, he would push heavy pipe uphill, resulting in strain to his back, would manually lift loads in excess of a hundred pounds and would climb through small pipe which he described as being "strenuous" to his back. Prior to 1952 or 1953, applicant experienced episodes wherein, after stooping over, he "couldn't come up" without pulling himself. Applicant testified that "throughout the years since 1948" he had experienced back problems and had difficulty straightening up.

In addition to applicant's testimony, medical evidence substantiated the existence of a cumulative injury during the pre-1969 period of employment. Reports of Dr. Jaime Contreras, dated June 22, 1970, and May 4, 1972, showed that the applicant had "a history of recurrent low back pain" and "sustained a continued type of trauma in the course of his employment, dating back to 1950"; that the recurrent episodes of back pain were diagnosed at various times as "acute disc" and "acute back"; that surgical procedures were performed on applicant's back; and that he was hospitalized and missed work on various occasions by reason of his back difficulties. Dr. Contreras' views were substantially confirmed by Dr. Paul H. Harmon who, in a report dated November 23, 1970, stated that, at least as of 1962, the applicant "continued having recurring back pain, punctuated and brought about by stresses of lifting"; that in January of 1965 an anterior discectomy and fusion was performed at the L4 and L5 levels; and that in January of 1967 a diagnosis was made of "disc degeneration" at the L5 and S1 space and the applicant was "advised not to do any heavy lifting." The views of Dr. Harmon were summarized as follows: "[T]he patient had . . . numerous flexion strains of the low back, with and without the back loaded . . . . The picture therefore, was that of loading the back, and of the excessive strain on it which extended over a period of the entire amount covered, i.e. certainly from 1954, consistently through 1958. This, in other words, means that this patient was subjected to continuous and repeated trauma."

■ Although, as we have seen, the new and amended legislation could not be applied retroactively to the cumulative injury to the extent to which it had been sustained by the applicant prior to 1969 (*State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.App.3d 812, 820), it nonetheless touches upon and must be held to affect the procedural posture in the context of which that injury must be viewed in that, as of the operative date of the legislation, the pre-1969 cumulative injury was open-ended, not having culminated in further need for medical treatment or disability until a time subsequent to January 1, 1969.[6] Thus, as of the operative date of such legislation, two work-related incidents, namely, those occurring in March of 1969 and on August 27, 1969, remained to take place and to give further dimension to the pre-1969 cumulative injury.

The incident of March 1969 is easily described—the applicant was "stooping over" and "could not come back up." In connection with such occurrence, the applicant was hospitalized for approximately seven or eight days, received medication and physiotherapy and did not return to work until approximately April 29, 1969. The incident of August 27, 1969, occurred as follows: As the applicant "stepped around from a cat walk around the stairway posts," he stepped in some grease and "came up, and went down," landing on a guideline "flat on . . . [his] back." Immediately after the fall, the applicant felt a "chill" and pain in his back, "stayed there for a few seconds," pulled himself up and "reported the accident" to his foreman. Although the applicant "got through the day," he noticed that his back "was stiffening up as the day progressed" and, after driving home, he "could not get out of the car" without his wife's help. Applicant was hospitalized that night and thereafter underwent back surgery on the fifth lumbar disc at the L5-S1 interspace. Applicant never returned to gainful employment subsequent to the occurrence of August 27, 1969.

Since the record demonstrates that the applicant suffered employment-caused disability as well as a need for medical treatment in 1969, we hold that the new and amended legislation applies in regard to the incidents which occurred subsequent to January 1, 1969. The applicable law is set forth in *Ferguson* v. *City of Oxnard*, 35 Cal. Comp. Cases 452, 456 (appeals board en banc opinion), wherein the WCAB stated that ". . . the determining factor, respecting whether or not the new legislation

---

[6]For an historical discussion of the statutory and decisional law relating to the date upon which an occupational injury is said to occur, see Swezey, *Repetitive Trauma as Industrial Injury in California* (1970) *supra,* 21 Hastings L.J. 631, 635-638.

applies, is not the date of the employment, but the date or dates upon which the employment-caused disability or need for treatment occurs."

Because the new and amended legislation is pertinent to the extent noted, we must now determine whether the WCAB gave it proper recognition and application. In this regard, we shall initially focus on the correctness of the WCAB determination that the applicant did not suffer a "specific" injury in 1969. Although the incidents of 1969, and particularly that which occurred on August 27, 1969, if examined without reference to the nature of applicant's work or to his prior medical history, might be characterized as being specific injuries within the meaning of section 3208.1, we are of the opinion that the record contains sufficient evidence to warrant a determination that the disability and need for medical treatment occurring subsequent to each of such incidents was a product of the repetitive trauma experienced by applicant throughout the employment period.

The evidence establishes that the applicant did not commence the year 1969 as a well man, but as a person who continued to experience infirmity by reason of his history of degenerative back condition.[7] The incident of March 1969 was described by Dr. K. S. Tabacopoulos as follows: "This patient has a long history of back disability and has been intermittently symptomatic for the last twelve years. . . . The recent alleged industrial injury appeared to be very trivial in nature, as a matter of fact, I doubt if there has been any injury at all. . . . There was no lifting or flexion strain applied to the low back to justify any additional injury." Dr. Paul H. Harmon stated that on March 3, 1969, the applicant suffered "an acute exacerbation of low back pain, which the best diagnosis is 'low back strain' . . . ," that ". . . the degeneration of the lumbosacral disc, the level which was not fused was a definite pre-existing cause for this acute back exacerbation and all others," that the incident of March 1969 was caused by "flexion and extension and body movements at work" and that an earlier laminectomy, an "anterior Lumbar 4/5 fusion," and "repeated industrial episodes" culminated in the applicant's hospitalization in March of 1969.

Upon the applicant's return to work subsequent to the incident of

---

[7]The applicant testified that from the time he returned to work in 1967 until the incident of March 1969 the condition of his back was "[n]ot good," that he "could hardly get out of bed in the morning," that he "couldn't straighten" and that, during such period of time, he wore a back brace.

March 1969, he was assigned "lighter work," but he "still had to do some lifting," as well as "crawling through pipe." Between the date that he returned to work in April of 1969 and the incident of August 27, 1969, the applicant described his condition as follows: "Very poor. The same condition it was before. My legs bothered me a lot. It was hard for me to get back up if I had to stoop over. . . . Regardless of everything I did, it was aggravating on my back."[8] The incident of August 27, 1969, was described by Dr. Jaime Contreras as being "of a more severe nature" and as "the one responsible for the patient's temporary disability at this time"; however, he concluded that, based upon the applicant's "history of recurrent injuries with intervening complaints of low back pain," his injuries "should be considered of a continuing nature during the course of his employment, and due to microtrauma during the course of his employment, dating back to sometime in 1950 and extending to the last injury of 1969, with damage to the disc spaces of his lumbar spine, necessitating the surgeries and limiting the patient to sedentary work." Dr. Harmon characterized the "slip and fall episode of August 27, 1969" as "the immediate precipitating factor that necessitated the second anterior fusion at another space," but also stated that the applicant "was subjected to continuous and repeated trauma" extending over the entire employment period and that "[t]herefore, although some observers have attributed the current disability of 69 and 70 to in part 'pre-existing conditions,' the pre-existing condition[s] were all compensable workmens [sic] compensation injuries or back strains, *together with continuous and repetitive strains suring [sic] the years mentioned above.*" (Italics added.) Moreover, although Dr. Harmon stated that "there was clear cut connection between the industrial accident of August 27, . . . [applicant's] hospitalization, and the subsequent need for surgery," he nonetheless indicated that such surgery "was on the fifth lumbar disc, an area known to be degenerated since a prior discogram in 1967," and that the applicant "has had a long-existing industrial traumata to the back, necessitating two prior operations." Stating that the diagnosis with respect to the incident of August 27, 1969, was "an acute exacerbation of low back pain precipitated by slipping on the grease spot and traumatizing the low back against an iron rail . . . ," Dr. Harmon, in reference to applicant's past history, described the "anatomic basis" as being "that

---

[8]These difficulties were the same as, or at least similar to, those experienced by the applicant prior to 1969, his testimony being that throughout the years subsequent to 1948 he suffered pains connected with certain types of activities and had difficulty straightening up.

there was with these industrial episodes, a continuing and apparently progressive deterioration of the lumbosacral disc (L5)."[9]

Based upon the lay and medical evidence hereinabove set forth, we cannot say as a matter of law that the temporary disability and need for medical treatment experienced by the applicant subsequent to each of the incidents in 1969 necessarily occurred as the result of "one incident or exposure," as such terms are used in the definition of a "specific" injury within the meaning of section 3208.1. In short, the evidence pertaining to the applicant's medical history suffices to permit an inference that the disabilities and needs for medical treatment experienced by him in 1969 were the product of repetitive physically traumatic activities extending over a period of time. Although the incident of August 27, 1969, involved a fall and the application of direct force to the applicant's back and has been described as having precipitated the disability which the applicant thereafter experienced, such does not necessarily preclude a determination that the incident was nonetheless "cumulative" in nature, for the term "traumatic," which is central to the concept of a cumulative injury as defined in section 3208.1, has been said to include "injuries caused by application of force. These forces include blows, falls, cuts, twists or strains which result in physical damage to the body." (Herlick, Cal. Workmen's Compensation Law (1970) § 10.22, p. 269; see 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (1973 ed.) § 11.01[2][a].) Whether an injury, which can be said to have been caused either by the immediate application of force or by past repetitive trauma[10]

---

[9]Although subsequent to the incident of August 27, 1969, the applicant's disc, at the L5-S1 level, was described as being "severely degenerated," such was not an entirely new phenomenon, for the applicant had had a previous laminectomy at the L5-S1 level, had experienced "[c]onsiderable tenderness" at that level in 1959, and there had been a diagnosis in 1961 of "Degenerative disc disease, L5-S1, right." Dr. M. Ray Rogers, in a consultation report of July 23, 1971, stated that the applicant's problem was characterized as that of "an intractable low back and left leg pain since an industrial injury in 8-69. Prior to that he had a similar problem but it had not been as intractable or as severe as it is at present."

[10]In State Comp. Ins. Fund v. Workmen's Comp. App. Bd., supra, 1 Cal.App.3d 812, at page 819, the court stated as follows: "If the specific incident was merely one of the contributing components of the cumulative result, a claim for the resultant disability or need for medical treatment was timely filed, pursuant to Labor Code section 5412 if the applicant filed within one year after he knew or should have known that the injury was industrially caused. If the incident in February 1962 alone was the cause of the temporary disability, Labor Code section 5411 would apply to bar the claim one year after the date of the incident. For purposes of the statute of limitations, it follows that the critical finding is not that there was a specific injury, but whether the temporary disability and need for medical treatment

is to be treated as specific (i.e., "occurring as the result of one incident or exposure") or cumulative (i.e., "occurring as repetitive mentally or physically traumatic activities extending over a period of time") is an issue of fact to be resolved by the WCAB and, if supported by substantial evidence, that determination is conclusive upon review. (Lab. Code, §§ 5952, 5953; *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].)

In view of the evidence relative to the applicant's history of recurring back problems, including particularly the June 22, 1970, report of Dr. Contreras that applicant's back injuries were "due to microtrauma during the course of his employment, dating back to sometime in 1950 and extending to the last injury of 1969," we hold that the WCAB was warranted in determining that the incidents that occurred in 1969, which resulted in disability and need for medical treatment, were of the cumulative type, even though one of them can be said to have involved the application of external force.

In the light of our determination that the occurrences of 1969 could be characterized as being encompassed within the definition of a cumulative injury, we shall now determine whether the WCAB correctly applied the new and amended legislation in finding that the applicant suffered a single cumulative injury for the period of employment.[11]

occurring in the course of the overall cumulative period of injury was caused solely by the specific incident."

Since section 5412, rather than section 5411, has been held to be the applicable statute of limitations in cases involving cumulative injuries under the new and amended legislation (*Chavez* v. *Workmen's Comp. App. Bd., supra,* 31 Cal.App.3d 5, 10-11, 14; see *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 569 [68 Cal.Rptr. 164, 440 P.2d 236]), we construe the immediately preceding, quoted language appearing in *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.App.3d 812, 819, to permit the inference that where temporary disability and need for medical treatment occurring in the course of an overall period of cumulative injury was not caused solely by a specific injury, the resultant injury may be characterized as being cumulative in nature.

[11]In commenting on the applicability of the new and amended legislation, the referee, in his "Report and Recommendation on Petition for Reconsideration," stated as follows: "It is a question of fact whether or not applicant sustained specific injuries in 1966, March, 1969 or on August 27, 1969 to be decided by the trier of fact and the facts and evidence substantially support the finding that these were aggravations of his pre-existing condition and not specific injuries; therefore there is no issue of whether Labor Code 3208.2 or 5303 apply. In order for the code section, effective after January 1, 1969, prohibiting merger of specific injuries in to a cumulative trauma injury would [*sic*] apply, there would first have to be the evidence to support the finding that applicant did, in fact, sustain specific injuries after the effective date of this code section."

In *Ferguson* v. *City of Oxnard*, 35 Cal. Comp. Cases 452, 457-458, the WCAB interpreted such legislation as follows: "Section 3208.1 of the new law provides for the occurrence of a separate definable injury, whether specific or cumulative, whenever employment activity, either singly, or as here upon a repetitively traumatic basis, causes disability or the need for medical treatment. Thus an employee will have a right of action against the employer or carrier for indemnity or medical benefits as of the moment his employment activities have caused either disability or need for medical treatment.

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"We are further persuaded that the word 'disability' used in the Section 3208.1 proviso to define the 'date of cumulative injury,' connotes *compensable* disability. This is consistent with early judicial precedents defining the term 'injury' for the purpose of the statute of limitations. (See *March* v. *I.A.C.* [(1933)] 217 Cal. 338, 19 I.A.C. 159 [18 P.2d 933]; *Pacific Indem. Co.* v. *I.A.C.* (*Rotondo*) [(1950)] 34 Cal. 2d 726, 15 Cal. Comp. Cases 37 [214 P.2d 530].) This interpretation is also supported by the use of the phrase *'any* disability' in Section 3208.1 referring to when a *right* of action for a cumulative injury arises, as distinguished from when the statute of limitations commences to run. Accordingly, '*any* disability or need for medical treatment' may give rise to a separate cumulative injury for which an applicant may file a claim; however, the statute of limitations will *not* commence to run upon such an injury until *compensable* disability has occurred." The opinion in *Ferguson* further stated that separate cumulative injuries arise under section 3208.1 where "periods of disability and/or need for medical treatment were interspersed within the alleged course of the repetitive traumatic activities. . . ." (35 Cal. Comp. Cases at p. 460.)

In the instant case, the referee expressly found that the cumulative injury "caused temporary disability through April 28, 1969 for which applicant has been fully compensated, and again beginning August 27, 1969 to September 20, 1972 and thereafter, for which indemnity is payable at $87.50 per week." In light of the reasoning expressed in *Ferguson* v. *City of Oxnard, supra,* 35 Cal. Comp. Cases 452, 457-458, 460, that separate periods of disability occurring within the course of repetitive traumatic activities necessarily give rise to separate injuries within the meaning of section 3208.1, we are of the opinion that the referee's determination as to the existence of a single cumulative injury was legally inconsistent with his finding that the applicant suffered two distinct

periods of disability in 1969. Since the referee found that the incidents of March 1969 and August 27, 1969, were not "specific" injuries, but were instead cumulative in nature, we hold that section 3208.1 compelled a finding that the applicant suffered more than a single cumulative injury in 1969. Given our determination as to the existence of multiple cumulative injuries, we further hold that the referee's statement that there existed no issue as to whether Labor Code sections 3208.2 and 5303 apply (see fn. 11, *supra*) was erroneous, for section 3208.2 applies when disability or need for medical treatment results from "the combined effects of two or more injuries, either specific, cumulative, or both" and the proviso to section 5303 applies in cases which involve multiple injuries.

For the reasons hereinabove set forth, the award is annulled and the cause remanded for further proceedings not inconsistent with this opinion.