[Civ. No. 35119. First Dist., Div. Two. Dec. 31, 1974.]

VIRGIL HARRISON, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
McNAMARA-FULLER et al., Respondents.

**COUNSEL**

Magee & Haywood, Levy, Van Bourg & Hackler and Barry J. Williams for Petitioner.

Charles Lawrence Sewzey, Philip M. Miyamoto and Thomas J. McBirnie for Respondents.

**OPINION**

**ROUSE, J.**—In this proceeding, petitioner, an injured employee, seeks review of an opinion and order denying reconsideration issued by the

Workmen's Compensation Appeals Board. The question presented is whether the board erred in giving retrospective effect to a 1973 amendment to section 5500.5 of the Labor Code.[1]

At the time petitioner sustained his injury, section 5500.5 provided, in pertinent part, that "Where a claim for compensation benefits is made on account of an occupational disease which may have arisen out of more than one employment, the application shall state the names and addresses of *all employers, the places of employment, and the approximate periods of employment where the employee was exposed to the hazards of the occupational disease. . . .*" (Italics added.) The section further provided that "In any case involving a claim of occupational disease contracted as a result of more than one employment, the employee making the claim, or his dependents, may elect to proceed against any one or more of the employers named in the application. Where such an election is made, the employee must successfully prove his claim against any one of the employers named, and any award which the appeals board shall issue awarding compensation benefits shall be a joint and several award as against any two or more employers who may be held liable for compensation benefits."

The section further provided that "At any time within one year after the appeals board has made an award for compensation benefits in connection with an occupational disease, any employer held liable under such award may institute proceedings before the appeals board for the purpose of determining an apportionment of liability or right of contribution."

In a well written opinion, the board notes that former section 5500.5, enacted by the Legislature in 1951 to codify the rule announced in *Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946) 29 Cal.2d 79 [172 P.2d 884], was unique in allowing the employee to recover against any one of many employments even though such employments may extend into the past for several decades and in allowing contribution and apportionment among such employments.[2]

---

[1] Unless otherwise designated, all code section references herein are to the Labor Code.

[2] Under most modern workmen's compensation acts, the employee's recovery and the employer's liability are limited to the "last injurious exposure" (3 Larson, Workmen's Compensation Law (1973) § 95.12, pp. 508.130-508.134), or by statute to some specific limited period of recent employment exposure (Larson, *supra*, § 95.24, pp. 508.146-508.148). In fact, the former California solution to the problem differs so significantly from other jurisdictions that Professor Larson discusses it in his national treatise under a separate section entitled "California rule: any contributing carrier liable" (Larson, *supra*, § 95.25, pp. 508.148-508.149).

The board then describes some of the problems which have developed under the California rule. For example, the serious difficulties encountered by the parties in complying with the requirements of former section 5500.5 whereby employees and their attorneys were frequently compelled to expend much time, effort and money in tracing the applicant's employment history over the entire course of his adult life. Fading memory, bankrupt or dissolved firms, and record destruction would often make this job difficult if not impossible. Untoward delay would result in attempting to secure such records. Likewise, even where some records were available from the Social Security Administration, such records would often be incomplete, and substantial delay would invariably result while awaiting federal administrative response to requests for additional information.

Preparing the application in compliance with such requirements became a difficult chore. When the employment history was collected, the applicant and his attorney then faced the difficult and expensive task of describing the names and addresses of the employers, the places of employment and the periods of employment in the application form. Further, the expense of reproducing the application forms and serving them by mail upon scores of employers was often placed upon the employee, constituting an additional burden upon the litigation of these claims.

Tracing insurance coverage for the many employers who might be involved in such claims presented a virtually impossible task for the agency and for the parties involved in the claims. When a claim involving multiple employers and carriers finally reached the hearing stage, proceedings were often grossly encumbered by milling numbers of attorneys in the corridors and hearing rooms representing the numerous carriers and employers in the suit, each of whom had a right to appear and cross-examine the applicant and his witnesses.

"It should also be noted," says the board, "that even though the former Section 5500.5 was limited by its express language to occupational disease claims, the courts have judicially recognized that cumulative injury claims have all the attributes of occupational diseases, thus rendering the former Section 5500.5 likely applicable to cumulative injuries as well as occupational diseases. (See *Fruehauf* v. *WCAB (Stansbury)*, 68 Cal.2d 569, 33 CCC 300.) Accordingly, not only would occupational disease claims be subject to the old statute, but the old statute's relief provisions—and more importantly its drawbacks as described above—would likewise apply to cumulative injury claims."

The board concludes that, as a result of the problems thus described, cases arising under former section 5500.5 which involve multiple employers and carriers have become a major calendaring problem in the agency's offices throughout this state. Not only have the petitioning employees themselves been adversely affected by the delay which has been caused by these problems, but also the claims of other employees are likewise indirectly affected because their cases may not be handled as expeditiously as they ordinarily would have been, since valuable referee time is expended in processing multiple party claims.

In due course the magnitude of the problem came to the attention of the Legislature. Following a legislative study of all the problems surrounding cumulative and occupational disease injuries by a committee, meeting with representatives from all segments of the workmen's compensation community, Assembly Bill 767 was presented in the Legislature. We are informed that the bill was sponsored by an association of applicants' attorneys, with but slight opposition from the insurance industry. That bill was enacted into law as a part of the overhaul and revision of section 5500.5.

The board notes that subdivision (a) of the new section brings California more in line with most modern workmen's compensation systems in other jurisdictions in that it provides for a "cut-off" date for employment exposure beyond which liability will not be imposed.[3]

In commenting upon the beneficial effects of the new provision, the board points out that it is apparent that the new provision will materially reduce the number of employers and insurance carriers who are proper parties in occupational disease or cumulative injury cases. Also, the problem of tracing employment and insurance coverage into the remote past is eliminated. The statute thus ameliorates the procedural morass faced by the board and the parties in multiple defendant cases.

With that background, we now turn to the facts of this particular case, which are illustrative of problems involved in the application of the former statute. The petitioning employee, a miner, claimed benefits because of occupational injury to his hearing and to his lungs during a

---

[3]Section 5500.5, subdivision (a), now reads as follows: "Liability for occupational disease or cumulative injury shall be limited to those employers who employed the employee during a period of five years immediately preceding either the date of injury, as determined pursuant to Section 5412, or the last date on which the employee was employed in an occupation exposing him to the hazards of such occupational disease or cumulative injury, whichever occurs first."

period beginning in 1940 and extending through December 1966, the last year of actual employment. In accordance with the then existing provisions of section 5500.5, petitioner attached to each application a list of some 27 employers and numerous carriers alleged to have covered the various employers going back to 1940. In addition and as part of his application, he included 12 pages of earnings records dating back to 1947 which he had obtained from the Social Security Administration.

When the matter came on for hearing on February 8, 1974, the referee expressed her opinion that section 5500.5, as amended effective January 1, 1974, was applicable. Accordingly, and over the objections of petitioner, she ordered dismissal of three insurance carriers who had been joined as defendants on the basis of representation made by their attorneys that they did not fall within any of the exceptions to section 5500.5, as amended, and that the employment for which they carried insurance was more than five years prior to December 1966, which was determined to be the date of injury.[4]

Upon the employee's petition for reconsideration of the referee's order of dismissal, the board issued its order denying reconsideration. In its opinion the board upheld the referee's order of dismissal, finding that section 5500.5, as amended, was applicable to all cases pending before the board.

Petitioner employee, relying upon *State of California* v. *Ind. Acc. Com.* (1957) 48 Cal.2d 355 [310 P.2d 1], urges that the law in effect at the time of the injury is the law governing all rights and liabilities arising out of the injury.[5] Petitioner argues that because the amendment substantially affects existing rights and obligations, it may not be given retrospective application. The board, in its decision upholding the dismissals, concedes that the amendment is substantive in effect as well as procedural, but argues that these labels are not controlling when the legislation was intended to remedy an intolerable situation which was imposing undue delays and expenses upon litigants and hardship on disabled employees.

---

[4]The insurance carriers ordered dismissed were Liberty Mutual Insurance Company, Argonaut Insurance Company, and Employers Mutual Insurance Company of Wisconsin.

[5]It is elementary that an industrial injury is the foundation of rights and liabilities under workmen's compensation laws. "Since the industrial injury is the basis for any compensation award, the law in force at the time of the injury is to be taken as the measure of the injured person's right of recovery." (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 392 [182 P.2d 159]; *State of California* v. *Ind. Acc. Com.,* *supra,* p. 361.) The law in force at the time of the injury also governs the employer's right to contribution. (*State of California* v. *Ind. Acc. Com.,* *supra,* pp. 363-364.)

Thus, we are faced with the question of whether or not section 5500.5, as amended, may be applied to claims where the injury occurred prior to January 1, 1974, the effective date of the amendment.

■ The board concedes that an employee's rights are affected since, under the provisions of the amended statute, an employee is limited to proceeding against employers who have employed him during the five years prior to the date of injury. The board contends, however, that the effect of the amendment upon the employee's rights is de minimus, since the employee is entitled to but one recovery which he will still be able to obtain against the employers or carriers who remain in the proceeding. The board notes that no claim has been made that the employers and carriers who remain in the proceeding are financially irresponsible, and that the likelihood of such a circumstance is so miniscule when compared to the magnitude of the problems remedied by the Legislature that any right lost by an employee through retrospective operation of the legislation cannot be characterized as truly substantial in nature.

We must agree that under the circumstances shown to exist in this case, the measure of the employee's right of recovery is not diminished.[6]

The board also concedes that if the amendment is applied retrospectively, the rights and liabilities of employers who remain in the litigation may be substantially affected. This is so because, through application of the new statute, some employers who might otherwise have been found liable for contribution will escape liability, thus diminishing the amounts the remaining employers may recover by way of contribution.

The board contends, however, that retrospective application of the new statute will not *directly* enlarge the liability of the employers and carriers involved. Whereas they may be required to assume a larger burden in some cases, yet in other cases these same employers and carriers will be absolved from any liability even though their employments may have contributed, in some degree, to an employee's ultimate disability. The board argues that "In the end when all cases are considered it will probably come out even, except that all parties stand to gain by the substantial savings in time and legal expense which would otherwise be expended in a multi-defendant litigation under the old statutory system. Undoubtedly the latter consideration was the reason for

---

[6]After the dismissal order, numerous carriers, including Insurance Company of North America, Pacific Employers Insurance Company, Industrial Indemnity Company, State Compensation Insurance Fund, and Fireman's Fund Insurance Co., remained as defendants.

the many sided support that this legislation had in the legislative process."[7]

There is little question but that the 1973 amendment to section 5500.5 affects rights and obligations that existed prior to the adoption of the amendment. Thus, under the established canon of interpretation, such amendment is not to be given a retrospective operation unless it is clearly made to appear that this was the legislative intent. (*State of California* v. *Ind. Acc. Com., supra,* p. 361; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 394 [182 P.2d 159]; see also Civ. Code, §§ 3, 6, Code Civ. Proc., § 8.)

The board insists that the Legislature intended to give retrospective operation to the 1973 amendment to section 5500.5, yet the board concedes that the Legislature used no language which manifests such an intent; moreover, in the *State of California* and *Aetna* cases, it was held that when the Legislature uses no language showing that it intended retrospective effect, such an intent may not be implied from the mere fact that the statute is remedial and subject to the rule of liberal interpretation. (*State of California* v. *Ind. Acc. Com., supra,* pp. 361-362; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* p. 395; see also *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865].)[8]

The board contends, however, that cases of more recent vintage have held that the canon of interpretation relied upon by the court in *State of California* and *Aetna* expressly subordinates its effect to a more fundamental rule of construction, namely, that a statute must be interpreted so as to *effectuate* legislative intent. (Italics added; *Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 686-687 [91 Cal.Rptr. 585, 478 P.2d 17]; *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 595 [97 Cal.Rptr. 30].)

In the *Mannheim* case, the court noted that "The supremacy of legislative intent over the rule of prospectivity has recently been

---

[7]We note that the insurance carriers who remain in this proceeding as party defendants did not oppose the dismissal order and have made no appearance in these review proceedings. This fact suggests to us that the employers-carriers' "substantial" rights which appear to be affected are not really all that substantial; further, that, economically speaking, we may be concerning ourselves with a nonexistent problem.

[8]We note that, after the decision in *State of California* v. *Ind. Acc. Com., supra,* the Legislature added the present final paragraph to section 5500.5 to make its 1959 amendment retroactive. (See *Jenkins* v. *Workmen's Comp. Appeals Bd.* (1973) 31 Cal.App.3d 259, 262, fn. 1 [107 Cal.Rptr. 130].)

reiterated in *In re Estrada* (1965) 63 Cal.2d 740 . . . [48 Cal.Rptr. 172, 408 P.2d 948], where this court said of the presumption of prospectivity: 'That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.' (63 Cal.2d at p. 746.)" (Pp. 686-687.)

Relying on this more recent rule, the board argues that it would be a blind and senseless application of the canon of statutory interpretation to ascribe to the Legislature an intent to postpone the relief afforded by the amendment to some date in the remote future. It is interesting to note that, in this instance, forces ordinarily opposed to one another, in practical effect, joined to encourage passage of legislation which was obviously designed to ameliorate the pressing problems that have arisen under the old statutory scheme. This is illustrated by the board's finding, as a fact, and as a matter of law, that it was the clear legislative intent that revised section 5500.5 be applied retrospectively, reasoning: "We have a pressing urgent problem in the present for the relief of which a statute has been passed. To us, this connotes an intent that the statute is to operate presently on existing cases, and not prospectively so as to be almost indefinitely postponed."[9]

In light of the legislative history of the section and all other pertinent factors presented to us by the board, we do not find it difficult, in this instance, to ascertain and identify the intent of the Legislature, charged as it is with a constitutional duty to provide a workmen's compensation system which "shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character . . . ." (Cal. Const., art. XX, § 21.) We agree with the board's opinion that the amended legislation was designed and introduced for the purpose of ameliorating the procedural morass which has faced the board in multiple defendant cases. Thus, it is clear that the purpose of the amendment was to remedy an immediate situation which was imposing undue delay and expense upon litigants and hardship upon disabled employees. It is also evident that the object of that legislation will not be effectuated unless the board is permitted to apply the amendment

[9]The board advises us that more than 1,600 cumulative and occupational injury claims are presently pending before the board.

retrospectively as well as prospectively. We conclude that it was the intent of the Legislature that it be so applied.

The order is affirmed.

Taylor, P. J., and Kane, J., concurred.