[Civ. No. 31507. First Dist., Div. Three. Sept. 29, 1975.]

SAFEWAY STORES, INC., Plaintiff and Respondent, v.
COUNTY OF ALAMEDA et al., Defendants and Appellants.

**Counsel**

Richard J. Moore, County Counsel, and Joseph P. Bingaman, Deputy County Counsel, for Defendants and Appellants.

Johnston, Klein, Horton, Solomon & Baker, V. Judson Klein, Paul W. Baker and Richard G. Polse for Plaintiff and Respondent.

OPINION

**DRAPER, P. J.**—This appeal concerns "escaped assessments." It turns upon the application to such assessments of the 1966 amendment to Revenue and Taxation Code section 1605, in the particular time sequence here shown.

Early in 1967, the assessor of Alameda County, acting on behalf of the county and the several defendant cities, entered escaped assessments against plaintiff upon the assessment rolls for the tax years 1964, 1965, and 1966. Such an entry was made February 28, 1967, but was superseded by entry, after March 6, 1967, of a smaller assessment for the same years. Safeway filed its application for reduction March 28, and it was heard April 20 by the board of supervisors, sitting as a board of equalization. On May 23, the board denied Safeway's application and affirmed escaped assessments for each of the years 1964, 1965, and 1966. Taxes upon these assessments amounted to a total of $230,180.05. Safeway paid the amount under protest, and brought this action to recover the sum so paid. The case was presented to the trial court upon the stipulations contained in a joint pretrial statement, the record of proceedings before the board of equalization, and some new evidence not directly relevant to the issues here discussed. Judgment was for plaintiff Safeway, and defendant county and cities appeal.

There is no dispute as to the appraised market value of the property assessed. The issue is whether the assessed valuation of Safeway property was determined at a higher percentage of market value than the property of other taxpayers generally in Alameda County.

In 1966, the Legislature amended section 1605 of Revenue and Taxation Code (Stats. 1966, First Ex. Sess., ch. 147, § 71, p. 672) to provide that the county board of equalization "shall equalize the assessment of property on the local roll by determining the full cash value of an individual assessment . . . and by reducing or increasing an individual assessment as provided in this section." It continues: "If . . . the ratio of assessed to full cash value deviates by more than 15 percent from the latest . . . ratio of assessment of all property in the county as found by the State Board of Equalization . . . this shall be prima facie evidence of an inequitable assessment and the county board shall equalize the assessment on said property to the lower of" three criteria, one of which is the ratio found by the state board. This amendment to section 1605 first became operative "for the 1967-68 assessment year." (Stats. 1966, First Ex.

Sess., ch. 147, § 23, p. 656.) The 1967-1968 assessment year began March 6, 1967 (Rev. & Tax. Code, §§ 118, 117) which was thus the effective date of the amendment to section 1605. The Alameda County ratio fixed by the state board for each of the years in question is far lower than the approximately 40 percent which the county board used in its equalization proceeding here.

■ The trial court held the amended section 1605 to be applicable here. Appellants assert error. They contend that such application of the amendment gives it a retrospective effect, and thus violates an established rule of statutory construction. They do not seek to assert that the statute violates a constitutional right by depriving them of a vested right. The omission of the constitutional contention seems required. (See, e.g., *California Emp. etc. Com.* v. *Payne,* 31 Cal.2d 210, 215 [187 P.2d 702].) Thus we look to the statute itself to determine whether it in truth operates retrospectively.

Certainly, the amended section 1605 adds nothing new to the substantive law of taxation. Since its admission to the union, California has required uniformity of property taxation. Our Constitution (art. XIII, § 1), until 1974, required that all property "shall be taxed in proportion to its value." The purpose of the provision was to "secure equality of taxation which results from subjecting all property to the same burden." (*Watchtower B. & T. Soc.* v. *County of L.A.,* 30 Cal.2d 426, 429 [182 P.2d 178].) (The 1974 amendment emphasizes application of the provision to the situation before us.) The state has long recognized that inequitable variations in assessments may occur, and has established county boards of equalization to assure corrections to effect uniformity of assessment for ad valorem taxation. In view of the practice of fixing assessed valuation at a fraction of market value, it is apparent that the mandated uniformity of taxation can be achieved only by applying to all property the same fraction or percentage of market value. This necessity has long been recognized and applied. The test has been "a comparison of the ratio of the assessed valuations to the market valuations of the subject properties, on the one hand, with the ratio of the assessed valuations to the market valuations of *all of the taxable property of the county,* on the other." (See cases cited in *Schwarz* v. *County of Marin,* 271 Cal.App.2d 120, 122 [76 Cal.Rptr. 207].) As shown by those cases, this rule is of long standing. The 1966 amendment to section 1605 merely implements, and in no way alters, the requirement of uniformity of property taxation.

It is quite true that the merely procedural rules governing application to a county board of equalization placed a severe burden upon a protesting taxpayer, however meritorious his case. The court in *Schwarz* pointed out that this "burden was well-nigh incapable of being sustained." (271 Cal.App.2d at p. 123.) The unwarranted burden upon the taxpayer seeking reduction of his assessment by the board lies in the requirement that he show the disparity between the ratio applied to his property as against the ratio applied to "all of the taxable property" in the entire county (*id.,* p. 122). This required the protesting taxpayer to perform extended and expensive research and appraisal. This problem was stressed by the legislative committee which recommended the 1966 amendment. (4 Assem. Com. on Rev. & Tax., Final Rep., Problems of Property Tax Administration, pt. 1 (1966) p. 53.) That committee emphasized that the several amendments made by Assembly Bill No. 80 (which initiated the 1966 amendment of § 1605) do "not alter the framework or system in which the appeal is made." (*Id.,* p. 53.) Rather, amended section 1605 is but one of six "procedural improvements in the appeal process:" The committee's emphasis upon the merely procedural character of the amendment suggests its intent that the amendment operates upon all equalization hearings after its effective date, regardless of the date of initial assessment.

On its face, the amendment does not operate upon any act already done. It does not restrict the basic assessment itself, the only act possibly done before March 6, 1967. Rather, it operates only upon the equalization proceedings of the county board. This distinction is completely apparent from the face of the statute, and is emphasized by the legislative committee which recommended the 1966 amendment (4 Assem. Com. on Rev. & Tax., Final Rep., Problems of Property Tax Administration, pt. 1, (1966) pp. 51-53). Equalization proceedings are not designed to vacate or replace the basic assessment as a whole. Rather, their purpose is to assure uniformity by levelling out the occasional, and hopefully infrequent, deviations from the overall assessment level. In this sense, a procedural alteration in the equalization procedure cannot be retrospective insofar as it operates upon an equalization hearing held after the effective date of the amending legislation. The equalization process in the case at hand could not have been undertaken earlier than March 6, 1967, the effective date of the amendment to section 1605. Thus we need not determine whether the basic escaped assessments against Safeway were made by the original entry on the tax roll eight days before the effective date of the amendment, or by the superseding entry made after that date.

We conclude that the 1966 amendment to section 1605 is not given retrospective effect by its application to the equalization proceeding here.

Even if some degree of retrospective operation could be found in the statute, appellants are aided only if a legislative intent to impose such operation is lacking. (See *California Emp. etc. Com.* v. *Payne, supra.*) ▮ Absent contrary indication in a statute, it is presumably intended to operate prospectively and not retroactively (see, e.g., *DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865]): But that rule "is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent." (*In re Estrada,* 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].) ▮ As shown above, the face of the statute makes it applicable to all equalization proceedings after March 6, 1967, regardless of date of the original assessment. The legislative committee report emphasizes this intent. The stressing of the merely "procedural" nature of the amendment doubtless stems from the oversimplified but quite general view that retroactivity is rejected only as to "substantive" changes in the law. Hence, it is reasonable to conclude that the Legislature intended the statute to apply to equalization of pre-1967 assessments even if the amendments were held technically retroactive.

Judgment affirmed.

Brown (H. C.), J., and Scott, J., concurred.

A petition for a rehearing was denied October 29, 1975, and appellants' petition for a hearing by the Supreme Court was denied December 11, 1975.