Opinion
SIMS, Acting P. J.
A writ of review was issued in this case, on the petition of the insurer, for the purpose of inquiring into and determining the lawfulness of an opinion and order after reconsideration of the Workers’ Compensation Appeals Board, sitting en banc, three commissioners dissenting. The opinion affirmed and adopted as its decision after reconsideration, an order filed April 16, 1976, granting an employee-applicant, injured prior to Januaiy 1, 1976, the right to designate a physician under the provisions of section 4600 of the Labor Code, which *135 became effective as of that date.[1] The petitioner contends that the amendments to the statute affected substantive rights and cannot be retroactively applied to a prior injury, and that the construction given the amendments by the appeals board should not be allowed because it may disrupt existing compatible physician-client relationships. We reject these contentions; the amendments affect no substantive rights. The opinion and order of the appeals board must be affirmed.
The applicant, an employee of the Oakland Unified School District, was injured on January 22, 1975, in the course of his duties as a schoolteacher. In addition to receiving treatment for his physical injuries, the applicant consulted a psychiatrist for attendant emotional problems. Several months after the incident, when first notified of the psychiatric *136 treatment, petitioner arranged for the applicant to be examined by another psychiatrist. Upon his recommendation that the applicant’s treatment be changed, petitioner arranged for the employee to be treated by a psychiatrist it had chosen, and on July 3, 1975, petitioner informed the applicant that it would not pay for any further treatments by the psychiatrist he had been consulting. After receiving some treatment from the psychiatrist selected by petitioner, the applicant on Januaiy 5, 1976, petitioned the board to be allowed to continue treatment with his own physician. Before a hearing was held on that petition, the applicant on February 19, 1976, gave notice of his choice of physician. The insurer refused to recognize his right to do so, and on March 4, 1976, he filed his petition to confirm his right to designate his own physician pursuant to section 4600 and an administrative rule, rule 9783, adopted by the administrative director January 22, 1976. The order under review resulted.
It is established that “[s]ince the industrial injury is the basis for any compensation award, the law in force at the time of injury is to be taken as the measure of the injured person’s right of recovery.” (Aetna Cas. & Surety Co. v. Ind. Acc. Com. (Charlesworth) (1947) 30 Cal.2d 388, 392 [182 P.2d 159]. See also State of California v. Ind. Acc. Com. (Erickson) (1957) 48 Cal.2d 355, 361 [310 P.2d 1]; and Harrison v. Workmen’s Comp. Appeals Bd. (1974) 44 Cal.App.3d 197, 202 [118 Cal.Rptr. 508].)
In Charlesworth, supra, the court reviewed a change in the law which modified a prior restriction on the award of both temporary and permanent disability payments. It added:. “The 1945 amendment of section 4661 increased the amount of compensation above what was payable at the date of the injury, and to that extent it enlarged the employee’s existing rights and the employer’s corresponding obligations. The amendment is therefore clearly substantive in character, and the commission, by applying it in the present proceedings, gave it a retrospective operation.” (30 Cal.2d at p. 392.) The decision continues: “The authorities support the conclusion that a statute changing the measure or method of computing compensation for disability or death is given retrospective effect when applied to disability or death resulting from an injury sustained before the effective date of the statute. [Citations.]. . . [¶ It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent. [Citations.]” (Id., at pp. 392- *137 393. See also Mannheim v. Superior Court (1970) 3 Cal.3d 678, 686 [91 Cal.Rptr. 585, 478 P.2d 17]; DiGenova v. State Board of Education (1962) 57 Cal.2d 167, 172-173 [18 Cal.Rptr. 369, 367 P.2d 865]; State of California v. Ind. Acc. Com., supra, 48 Cal.2d 355, 361; Harrison v. Workmen’s Comp. Appeals Bd., supra, 44 Cal.App.3d 197, 204; and Coast Bank v. Holmes (1971) 19 Cal.App.3d 581, 594 [97 Cal.Rptr. 30].)
Acknowledgedly the medical, surgical, chiropractic and hospital treatment to be provided by the employer or his insured are benefits under the act. In Union Iron Wks. v. Industrial Acc. Com. (1922) 190 Cal. 33 [210 P. 410], the court noted, after referring to disability payments paid in lieu of wages, “And to secure the speedy return of the workman to productive employment it is provided that medical and surgical services shall be furnished by the employer. This liability for medical and surgical services is not, therefore, a burden placed upon the employer as a penalty for any failure of duty on his part, but is merely a part of the whole compensation due the employee as the result of his injury. It therefore follows that the medical and surgical services contemplated and called for by the statute in question should be such as will tend to secure the return of the workman to productive employment.” (190 Cal. at pp. 39-40. See also Kaiser Foundation Hospitals v. Workers’ Comp. Appeals Bd. (1977) 19 Cal.3d 329, 332-333 [137 Cal.Rptr. 878, 562 P.2d 1037]; Zeeb v. Workmen’s Comp. App. Bd. (1967) 67 Cal.2d 496, 500-501 [62 Cal.Rptr. 753, 432 P.2d 361]; and McCoy v. Industrial Acc. Com. (1966) 64 Cal.2d 82, 87 [48 Cal.Rptr. 858, 410 P.2d 362].) In McCoy the court referred to “the mandate of section 4600 according him [the employer] the right to control the employee’s medical care . ...” (64 Cal.2d at p. 89, italics added.) In Zeeb, the court explained the rationale for the control vested in the employer prior to January 1, 1976, as follows: “Obviously, it will ordinarily be in the interests of both the employer and the employee to secure adequate medical treatment so that the employee may recover from his injury and return to work as soon as possible. Permitting the employer to control the medical treatment permits the employer, who has the burden to provide the medical treatment, to minimize the danger of unnecessary and extravagant treatment, and in the light of the employer’s interest in speedy recovery, the employer’s control should rarely result in a denial of necessary treatment. Thus the two purposes underlying section 4600 of the Labor Code, effective treatment and minimization of expense, will ordinarily be served where the employer is permitted control of the medical treatment.” (67 Cal.2d at p. 501.)
*138 From the foregoing the insurer, and the dissenting minority of the appeals board, conclude, as stated by the latter: “It is abundantly clear that the Supreme Court has, interpreted the right of medical control under Labor Code section 4600 prior to the 1975 amendment to be a substantive one.” We disagree. In McCoy the court carefully distinguished between the medical benefits due from the employer to the employee and the manner in which they were to be furnished, as follows: “It is important to note at the outset that we are not here concerned with the scope of the employer’s responsibility to furnish medical attention to an employee who suffers an industrial injury. The employer, whether providing the treatment himself or reimbursing the employee for self-procured care, is required by section 4600 to pay only the cost of such care as is reasonably required to cure or relieve. The aspect of the statute with which we deal is the extent of the employer’s privilege to control the course of the injured employee’s medical care.” (64 Cal.2d at p. 86, italics added.) It also referred to the employer’s “opportunity to render medical assistance.” (Id., at p. 87, italics added.)
The rationale of Zeeb, which is quoted above, does not bear analysis. If there is unnecessaiy and extravagant treatment the employer or his insurer should not bear the cost of such treatment. As stated in McCoy and recognized in Zeeb, “And we emphasize also that, whether the treatment is administered by a doctor chosen by the employee or one selected by the employer, the latter is liable for no more than the reasonable cost of such treatment as is reasonably required to cure or relieve from the effects of the injury.” (64 Cal.2d at p. 89, 67 Cal.2d at p. 502. See also Bell v. Samaritan Medical Clinic, Inc. (1976) 60 Cal.App.3d 486, 489-492 [hg. den.] [131 Cal.Rptr. 582].)
The Legislature has neither increased nor decreased the cost of the medical benefits due from the employer to the employee. It has rejected the rationale of Zeeb, and changed the procedure under which the benefits will be furnished. As a matter of policy it has recognized that the employee may secure a speedier and more efficient recovery under the care of a physician of his own selection in whom he has trust and confidence. We can no more assume that such a physician will furnish “unnecessary and extravagant treatment” than we can infer that a physician selected by the insurer will fail to furnish adequate treatment in an effort to cut down the insurer’s costs.
In Charlesworth the contention was made that the change in benefits related solely to matters of procedure or remedy which were not subject *139 to any proscription of retroactive application (30 Cal.2d at p. 393). The court pointed out the reason for the exception as follows: “[Procedural statutes may become operative only when and if the procedure or remedy is invoked, and if the trial postdates the enactment, the statute operates in the future regardless of the time of occurrence of the events giving rise to the cause of action. [Citation.] In such cases the statutory changes are said to apply not because they constitute an exception to the general rule of statutory construction, but because they are not in fact retrospective. There is then no problem as to whether the Legislature intended the changes to operate retroactively.” (Id., p. 394. See also Safeway Stores, Inc. v. County of Alameda (1975) 51 Cal.App.3d 783, 786-788 [124 Cal.Rptr. 503]; Van Nuis v. Los Angeles Soap Co. (1973) 36 Cal.App.3d 222, 228, fn. 2 [111 Cal.Rptr. 398]; Jenkins v. Workmen’s Comp. Appeals Bd. (1973) 31 Cal.App.3d 259, 263-264 [107 Cal.Rptr. 130]; Coast Bank v. Holmes, supra, 19 Cal.App.3d 581, 593-595; and McBarron v. Kimball (1962) 210 Cal.App.2d 218, 220 [26 Cal.Rptr. 379].) The court rejected that analysis, stating: “As we have heretofore concluded, the amendment of section 4662 is substantive in its effect, and its operation would be retroactive, since it imposes a new or additional liability and substantially affects existing rights and obligations.” (Id., at p. 395.)
In this case the change effected by the Legislature does not on its face impose a new or additional liability. Although it affects the privilege of the employer and his insurer to control the employee’s medical care it does not do so retroactively. Care through December 31, 1975, was presumably furnished under the prior statute. The order can only affect the treatment of the employee by the selected physician after February 19, 1976, when notice was given as required by the new statute. There is no retroactive effect in applying the statute to medical treatment due from the employer after December 31, 1976. Moreover, it is clearly the legislative policy that one treated^ in 1976 and thereafter for an injury that occurred after January 1, 1976, should have the privilege of being treated by a physician of his choice after 30 days from the date the injury was reported. There is no reason why the same policy should be withheld and not apply to those who were injured previously. Tire statute is effective after 30 o ays from the date the injury was reported.
We reject the concept that such an application of the statute will destroy existing compatible physician-client relationships. There is no reason to infer that such consequences would necessarily ensue, or that if they do it will necessarily result in unnecessary or extravagant treatment *140 which will increase the liability of the employer and his insurer. We would, therefore, also conclude that the Legislature impliedly intended that the statute should apply to all and any medical treatment the employer was obligated to furnish after January 1, 1976. (See Mannheim v. Superior Court, supra, 3 Cal.3d 678, 686-687; Safeway Stores, Inc. v. County of Alameda, supra, 51 Cal.App.3d 782, 788; Harrison v. Workmen’s Comp., supra, 44 Cal.App.3d 197, 204-206; Van Nuis v. Los Angeles Soap Co., supra, 36 Cal.App.3d 222, 228-229; and Coast Bank v. Holmes, supra, 19 Cal.App.3d 581, 595.)
The opinion and order of the appeals board are affirmed.
Elkington, J., and Lazarus, J.,* concurred.
On July 27, 1977, the opinion was modified to read as printed above. Petitioner’s application for a hearing by the Supreme Court was denied August 25, 1977.

By Statutes 1975, chapter 1259, section 1, the first paragraph of section 4600 was amended by the addition of the emphasized language: “Medical, surgical, chiropractic, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment. After 30 days from the date the injury is reported, the employee may he treated by a physician of his own choice or at a facility of his own choice within a reasonable geographic area. ”
By section 2 of the same statute the provisions of former section 4601 were repealed, and by section 3 the provisions set forth below were enacted as a new section 4601. New provisions are emphasized; deleted relevant portions of the repealed section are included in brackets; the remaining provisions are found in both the old and new sections. “If the employee so requests, the employer shall tender him one change of physicians. Upon request of the employee for a change of physicians, [12 days shall be] the maximum amount of time permitted by law for the employer or insurance carrier [to nominate at least five additional practicing physicians or if requested by the employee, four physicians and one chiropractor competent to treat the particular case from among whom the employer may choose] to provide the employee an alternative physician or, if requested by the employee, a chiropractor, shall be five working days from the date of the request. The employee is [also] entitled, in any serious case, upon request, to the services of a consulting physician or chiropractor of his choice at the expense of the employer. [All of such] Such treatment shall be at the expense of the employer.” (Other repealed provisions dealt with the failure to nominate and the manner in which those nominated should be approved by the medical director.)
Section 4 repealed former section 4603 which provided that the provisions relating to change of physicians were inapplicable where the employer maintained an approved hospital and hospital staff"for his employees. Section 5 added a new section 4603 reading, “If the employer desires a change of physicians or chiropractor, he may petition the administrative director who, upon a showing of good cause by the employer, may order the employer to provide a panel of five physicians, or if requested by the employee, four physicians and one chiropractor competent to treat the particular case, from which the employee must select one."
Sections 6 and 7 added section 4603.2 and 4603.5 to provide administrative details for the new provisions.

Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.