[Civ. No. 51473. Second Dist., Div. One. Dec. 5, 1978.]

CITY OF LOS ANGELES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
CHARLES CALVERT et al., Respondents.

## Counsel

Burt Pines, City Attorney, H. John Wittorff, Assistant City Attorney, and Mary E. McDaniel, Deputy City Attorney, for Petitioner.

Lewis & Marenstein and Michael T. Roberts for Respondents.

## Opinion

**LILLIE, Acting P. J.**—Petitioner city filed petition for writ of review claiming it was not an employer of Charles Calvert, the injured employee within the meaning of Labor Code section 5500.5[1] during the last five

[1]Labor Code section 5500.5 provides in pertinent part:

"(a) [L]iability for occupational disease or cumulative injury shall be limited to those employers who employed the employee during a period of five years immediately preceding either the date of injury, as determined pursuant to Section 5412, or the last date on which the employee was employed in an occupation exposing him to the hazards of such occupational disease or cumulative injury, whichever occurs first. If, based upon all the evidence presented, the appeals board or referee finds the existence of cumulative injury or occupational disease, liability for such cumulative injury or occupational disease shall not be apportioned to prior years except as provided in subdivision (d); however, in determining such liability, evidence of disability due to specific injury, disability due to nonindustrial causes, or disability previously compensated for by way of a findings and award or order approving compromise and release, or a voluntary payment of disability, may be admissible for purposes of apportionment.

"(b) Where a claim for compensation benefits is made on account of an occupational disease or cumulative injury which may have arisen out of more than one employment, the application shall state the names and addresses of all employers liable under subdivision (a), the places of employment, and the approximate periods of employment where the employee was exposed to the hazards of the occupational disease or cumulative injury. If the application is not so prepared or omits necessary and proper employers, any interested party, at or prior to the first hearing, may request the appeals board to join as defendant any necessary or proper party. If such request is made prior to the first hearing on the application, the appeals board shall forthwith join the employer as a party defendant and cause a copy of the application together with a notice of the time and place of hearing to be served upon such omitted employer; provided, such notice can be given within the time specified in this division. If such notice cannot be timely given or if the motion for joinder is made at the time of the first hearing, then the appeals board or referee before whom the hearing is held, if it is found that the omitted employer named is a necessary or proper party, may order a joinder of such party and continue the hearing so that proper notice may be given to the party or parties so joined. Only one continuance shall be allowed for the purpose of joining additional parties. Subsequent to the first hearing the appeals board shall join as a party defendant any additional employer when it appears that such employer is a proper party, but the liability of such employer shall not be determined until supplemental proceedings are instituted.

"(c) In any case involving a claim of occupational disease or cumulative injury occurring as a result of more than one employment within the five-year period set forth in

years of Calvert's employment or within five years of the "date of injury" and accordingly, should have been dismissed as a defendant in Calvert's claim for workers' compensation benefits. We hold that the city is a party which is at least in part liable for Calvert's industrial injury within the provisions of section 5500.5.

The following were the proceedings before the appeals board.

subdivision (a), the employee making the claim, or his dependents, may elect to proceed against any one or more of such employers. Where such an election is made, the employee must successfully prove his claim against any one of the employers named, and any award which the appeals board shall issue awarding compensation benefits shall be a joint and several award as against any two or more employers who may be held liable for compensation benefits. If, during the pendency of any claim wherein the employee or his dependents has made an election to proceed against one or more employers, it should appear that there is another proper party not yet joined, such additional party shall be joined as a defendant by the appeals board on the motion of any party in interest, but the liability of such employer shall not be determined until supplemental proceedings are instituted. Any employer joined as a defendant subsequent to the first hearing or subsequent to the election provided herein shall not be entitled to participate in any of the proceedings prior to the appeal board's final decision, nor to any continuance or further proceedings, but may be permitted to ascertain from the employee or his dependents such information as will enable the employer to determine the time, place, and duration of the alleged employment. On supplemental proceedings, however, the right of the employer to full and complete examination or cross-examination shall not be restricted.

"(d) If the employment exposing the employee to the hazards of the claimed occupational disease or cumulative injury was for more than five years with the same employer, or its predecessors in interest, the limitation of liability to the last five years of employment as set forth in subdivision (a) shall be inapplicable. Liability in such circumstances shall extend to all insurers who insure the workmen's compensation liability of such employer, during the entire period of the employee's exposure with such employer, or its predecessors in interest. The respective contributions of such insurers shall be in proportion to employment during their respective periods of coverage. As used in this subdivision, 'insurer' includes an employer who during any period of the employee's exposure was self-insured or legally uninsured.

"The provisions of this subdivision shall expire on July 1, 1986, unless otherwise extended by the Legislature prior to that date.

"(e) At any time within one year after the appeals board has made an award for compensation benefits in connection with an occupational disease or cumulative injury, any employer held liable under such award may institute proceedings before the appeals board for the purpose of determining an apportionment of liability or right of contribution. Such a proceeding shall not diminish, restrict, or alter in any way the recovery previously allowed the employee or his dependents, but shall be limited to a determination of the respective contribution rights, interests or liabilities of all the employers joined in the proceeding, either initially or supplementally; provided, however, if the appeals board finds on supplemental proceedings for the purpose of determining an apportionment of liability or of a right of contribution that an employer previously held liable in fact has no liability, it may dismiss such employer and amend its original award in such manner as may be required.

". . . . . . . . . . . . . . . "

Hereinafter unless specified to the contrary, all references will be to the Labor Code.

Calvert was employed by city as a police officer from June 1949 until retiring on a service pension on September 18, 1969. From September 1969 until January 1971, he worked for Burns International Security Systems, Inc. where he was assigned to stolen credit card investigation. In February 1971, he went to work for Security Pacific National Bank in the same capacity as for Burns.

In October 1971, while employed by Security Pacific Bank, Calvert suffered an acute inferior myocardial infarction (heart attack) and was hospitalized for 20 days. He returned to work at Security Pacific Bank in late December 1971, and is currently employed there.

In March 1975, Calvert first became aware of the possibility that his heart attack and resulting disability might be connected with his employment, when an associate at work suggested he see an attorney. Calvert sought legal advice, and in April 1975 filed with the appeals board an application for adjudication of claim which alleged that as the result of his employment with the city he sustained injury to his cardiovascular system arising out of and occurring in the course of his employment. He consulted Martin Goldfarb, M.D.; in his opinion Calvert's employment at city was responsible for his coronary arterio-sclerosis and myocardial infarction of October 1971; his employment activities at Burns and Security Pacific Bank were not stressful; and he could continue to work at Security Pacific Bank. (Reports, May 9, 1975, Aug. 11, 1975.) The city consulted William H. Allen, M.D. who viewed it as a "policy decision" for the appeals board whether Cal-vert's employment with city should be held responsible for his heart attack occurring 25 months after retirement from city.

Calvert and city selected I. Ralph Goldman, M.D. as an "agreed medical examiner"; his opinion was that Calvert's heart disease and disability were industrially related; he apportioned the industrial aspects[2] as 60 percent attributable to Calvert's employment at City, 15 percent

---

[2]Dr. Goldman apportioned 50 percent of the disability to the nonindustrial factors of "normal aging, stresses outside [Calvert's] occupation, smoking, endocrine factors such as hyperlipidemia and the possibility of diabetes and finally congenital factors." The workers' compensation judge disallowed the apportionment to nonindustrial factors and no party here has challenged the judge's finding on such point. We observe that Dr. Goldman's apportionment appears invalid as not in accord with the applicable legal principles. (See *Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 235-248 [145 Cal.Rptr. 22]; *Dorman* v. *Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 1009, 1016-1018 [144 Cal.Rptr. 573].)

attributable to employment at Burns, and 25 percent attributable to employment at Security Pacific Bank. (Report of Feb. 5, 1976.)

Upon motion by the city, Security Pacific Bank and Pacific Employers Insurance Company, its workers' compensation insurance carrier, and Burns and its carrier, State Compensation Insurance Fund were joined as parties-defendant.[3]

Thereafter the city's motion for dismissal based upon section 5500.5, subdivision (a) was denied by the workers' compensation judge. Calvert then elected to proceed against city as the representative defendant-employer (§ 5500.5, subd. (c)). The cause was tried and submitted.

On March 16, 1977, the judge issued findings and award. He found that (1) Calvert had sustained injury to his heart arising out of and occurring in the course of his employment for the period from June 16, 1949, through September 18, 1969; (2) city was an employer within the five-year period of the date of inquiry as specified in section 5500.5, subdivision (a), and (3) there was "no basis for apportionment other than between various employers [which was] to be adjusted between the parties." City was directed "to pay the award with the right of contribution from subsequent employers."

City sought reconsideration by the board; its sole contention was that it should have been dismissed. The judge in his opinion concluded the city was properly a defendant since the "date of injury was on or about October 14, 1971, when the applicant had a heart attack" even though "[i]t was not until April 1975 he learned that his heart attack might be work connected." The board, in a three-member panel, denied reconsideration based thereon.

City advances the position it should be dismissed as not an employer of Calvert within the five-year period of section 5500.5, subdivision (a) because the date of injury for Calvert's claim under section 5412[4] is

---

[3]Security Pacific Bank appeared before the appeals board in this matter but did not respond to city's petition for writ of review. Neither Burns nor State Fund (as Burns' carrier) has entered an appearance before either the appeals board or this court. State Fund did appear for another alleged employer who was later dismissed before the case was submitted to the appeals board for decision as such alleged employer was not actually an employer of Calvert.

[4]Section 5412: "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either

March/April 1975 when he first learned of the possible industrial relationship of his heart condition and accordingly, under section 5500.5, the employers who would be liable would be those during a period five years back to 1970. Under this position the "date of injury" is used as the ending point of the cumulative heart trauma under section 5500.5, subdivision (a), as the "date of injury" is earlier than the last date of "hazardous exposure" since Calvert continued to be "employed" at Security Pacific Bank after March/April 1975.

Prior to being amended, effective January 1, 1974, section 5500.5 codified the rule announced in *Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946) 29 Cal.2d 79 [172 P.2d 884], which allowed an employee in continuous trauma or occupational disease cases to recover against any one of many employments even though the many employments may have extended into the past for several decades and allowed contribution and apportionment among such employments. (*Harrison* v. *Workmen's Comp. Appeals Bd.* (1974) 44 Cal.App.3d 197, 199 [118 Cal.Rptr. 508].)

Subdivision (a) of section 5500.5, as enacted effective January 1, 1974, which is the form applicable here (see *Harrison, supra,* 44 Cal.App.3d 197), permits an employee claiming liability for occupational disease or cumulative injury to proceed only against employers who employed him during a period of five years immediately preceding either the date of injury or the last date on which the employee was employed in an occupation exposing him to the hazards of such occupational disease or cumulative injury, whichever occurs first. Liability in such cases is limited to such employers and is not apportioned to prior years. However, the limitation of liability provided in subdivision (a) is inapplicable where, as provided in subdivision (d) of section 5500.5, the last employment exposing the employee to the hazards of the claimed occupational disease or cumulative injury was for more than five years with the same employer or its predecessors in interest. In such circumstances liability is *extended* to all "insurers"[5] who insured the workers' compensation liability of such employer during the entire period of the employee's exposure with such employer or its predecessor in interest. (*Tidewater Oil Co.* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal.App.3d 950, 952-953 [137 Cal.Rptr. 36].)

knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment."

[5]As used in reference to section 5500.5, subdivision (d), the subsection specifies " 'insurer' includes an employer who during any period of the employee's exposure was legally uninsured."

Under subdivision (c), in cases involving a claim of occupational disease or cumulative injury occurring as a result of more than one employment within the five-year period set forth in subdivision (a), the injured employee, or his dependents, may elect to proceed against any one or more of the employers within the five-year period. Once the election is made, the injured employee must prove his claim against any one of the "employers named," and if he does so, the appeals board is to issue a "joint several award" for benefits. Under subdivision (e) the employer or employers held liable may, within one year of the award, institute proceedings before the appeals board for the purposes of determining an apportionment of liability or right of contribution from other employers.

Section 5500.5 was again modified by the Legislature in 1977. (Stats. 1977, ch. 360, § 1, p. 1334.) While the changes do not apply to claims for benefits "filed or asserted" before January 1, 1978, as shall be seen, these amendments must be reviewed in order that the interpretation of section 5500.5 as determined here does not render the new version of section 5500.5 unworkable.

With regard to all claims for occupational disease or cumulative injury which are filed or asserted on or after January 1, 1978, the 1977 amendments to section 5500.5 reduce the period of employment in which employers are liable from five to four years. Commencing January 1, 1979, and thereafter on the first day of January for each of the next two years the period of liability is decreased by one additional year so that for claims filed or asserted on or after January 1, 1981, the liability period is one year. The 1977 amendments have eliminated the rule that if the employment where employee was last exposed to the hazards of a claimed occupational disease or cumulative injury was for more than five years with the same employer, or its predecessor in interest, the limitation to the last five years of employment was inapplicable.

Unfortunately it is not clear whether the workers' compensation judge found the employment at both Burns and Security Pacific contributed to or aggravated Calvert's industrial heart condition. In the opinion of Dr. Goldman, the agreed medical examiner, the employment with Burns and Security Pacific did contribute to the industrial heart condition. Dr. Goldfarb disagreed and viewed the employment at Burns and Security Pacific as not stressful. The judge may have accepted Dr. Goldman's view inasmuch as he noted that city had the "right of contribution from

subsequent employers," i.e., Burns and Security Pacific, but this is not clearly stated. If employment with Burns and Security Pacific did not constitute part of the industrial exposure, then under section 5500.5, subdivision (a) liability would be entirely on city since the last date of employment exposing Calvert to the hazards of occupational disease or cumulative injury would be when Calvert left the city's employ. This question must be specifically answered by the appeals board on remand.

We now turn to the application of section 5500.5 if the appeals board on remand finds that the employment with Burns and Security Pacific were part of Calvert's "industrial exposure." Under section 5500.5, subdivision (a), as here applicable, liability for occupational disease or cumulative injury is limited to employers who employed the injured for "a period of five years immediately preceding either *the date of injury, as determined pursuant to section 5412, or the last date* on which the employee was employed in an occupation *exposing him to the hazards* of such occupational disease or cumulative injury, *whichever occurs first.*" (Italics added.) Thus, to apply the five-year limitation of liability the date the injured was last exposed to industrial hazards, and the "date of injury" as it is defined in section 5412 must be determined; the earliest of two dates is the date from which the five-year period extends backward.

■■■■ ■ The "date of injury" in cases of occupational diseases or cumulative injuries is defined in section 5412 as "that date upon which the employee first suffered disability therefrom *and* either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment." (Italics added.) (Lab. Code, § 5412; *Chavez* v. *Workmen's Comp. Appeals Bd.* (1973) 31 Cal.App.3d 5, 10-12 [106 Cal.Rptr. 853].)[6] Calvert first became disabled in October 1971; however, he had no knowledge of the industrial relationship until 1975. Therefore, the "date of injury" for purposes of section 5412 is in 1975, since that is when there was for the first time a concurrence of both "disability" and "knowledge."

---

[6]The purpose of section 5412 is the application of the statute of limitations as set forth in Labor Code section 5405, subdivision (a), which provides that proceedings for workers' compensation benefits must be commenced within one year of the date of injury. Thereby, in occupational disease and cumulative injury cases, only when there is a concurrence of both knowledge and disability can the statute of limitations run. In this way no claim for benefits is barred before the injured is aware of his rights. (*Chavez* v. *Workmen's Comp. Appeals Bd., supra,* 31 Cal.App.3d 5.) However, the benefits to which an injured is entitled are determined by the law in effect on the date the injured becomes disabled (*Dickow* v. *Workmen's Comp. Appeals Bd.* (1973) 34 Cal.App.3d 762 [109 Cal.Rptr. 317]) and not the "date of discovery" for purposes of the statute of limitations.

According to Dr. Goldman, the "last date" Calvert "was employed in an occupation exposing him to the hazards" of his employment regarding his heart condition was, at the earliest, February 1976. The date may be even more recent since Calvert appears to be still working for Security Pacific.

Under section 5500.5, subdivision (a), once the "date of injury" and "last date of hazardous exposure" are determined, one looks to the earliest of these two dates to determine the date from which liability goes back five years. Thus, city argues, since the earliest of these dates is 1975, under section 5500.5, subdivision (a) liability for Calvert's heart disability is limited to those employers during the five-year period 1970 to 1975; therefore inasmuch as Calvert was last employed by city in September 1969, it should have been dismissed as having no liability.

City's argument, while inviting in its simplicity would cause future problems under section 5500.5 as modified by the 1977 amendments. If the three-year period, which will go into effect in 1979, were applicable to this case, the liability would be limited to employers during the period 1972 to 1975; but the problem would be in charging the employers during the period 1972 to 1975 with liability for medical expense and temporary disability that occurred as the result of the heart attack in 1971.

■ The alternative solution, as suggested by Calvert, would be to find that the five-year period runs back from October 1971 when Calvert first became disabled. This leads to the conclusion that we are dealing with two injuries, not one, based upon Labor Code sections 3208.1, 3208.2[7] and 5303.[8]

---

[7]Section 3208.2 provides: "When disability, need for medical treatment, or death results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including, but not limited to, the apportionment between such injuries of liability for disability benefits, the cost of medical treatment, and any death benefit."

[8]Section 5303 provides: "There is but one cause of action for each injury coming within the provisions of this division. All claims brought for medical expense, disability payments, death benefits, burial expenses, liens, or any other matter arising out of such injury may, in the discretion of the appeals board, be joined in the same proceeding at any time; provided, however, that no injury, whether specific or cumulative, shall, for any purpose whatsoever, merge into or form a part of another injury; nor shall any award based on a cumulative injury include disability caused by any specific injury or by any other cumulative injury causing or contributing to the existing disability, need for medical treatment or death."

Sections 3208.1, 3208.2 and 5303 comprise the "Anti-merger Legislation." The history of the anti-merger legislation is set forth in the margin.[9] The effect of these sections upon continuous trauma injuries was explained in *Aetna Cas. & Surety Co.* v. *Workmen's Comp. Appeals Bd. (Coltharp) supra,* 35 Cal.App.3d 329, and by the appeals board in *Ferguson* v. *City of Oxnard,* 35 Cal.Comp. Cases 452 (appeals board en banc opinion, 1970). In *Coltharp* the court, relying on *Ferguson,* held Labor Code sections 3208.1, 3208.2 and 5303 even proscribed the merger of continuous trauma injuries. The court noted that separate cumulative injuries arise under section 3208.1 where period of disability and need for medical treatment are interspersed within the alleged course of the cumulatively traumatic activities.

Thus, here Calvert actually suffered two injuries. One cumulative injury ended at the time of the heart attack in October 1971, and the second cumulative injury commenced after Calvert returned to work after

---

[9]"The case law prior to January 1, 1969, held that a single cumulative injury could be found based upon an employment period embracing several specific work-related incidents which themselves caused time lost from work or the need for medical treatment. Thus, even though a portion of the employee's ultimate disability was established to have been caused by a specific incident within the employment period, which was otherwise barred by the statute of limitations, the employee nevertheless could obtain full recovery because the specific incident was deemed merged into cumulative injury. (*DeLuna* v. *Workmen's Comp. App. Bd.,* 258 Cal.App.2d 199 [65 Cal.Rptr. 421]; *Miller* v. *Workmen's Comp. App. Bd.,* 258 Cal.App.2d 490 [65 Cal.Rptr. 835].) A cumulative injury could have its inception in a specific incident followed by work-connected aggravations, exacerbations, or flare-ups of the employee's condition as initially caused by the specific incident, together with a series of specific incidents superimposed upon the daily strains of continuous work. The fact that a single incident within the period of employment exposure might itself have caused compensable disability did not *ipso facto* preclude a finding that the single incident was but a part of and merged with the entire period of employment exposure giving rise to the cumulative injury. (*Fibreboard Paper Products Corp.* v. *Industrial Acc. Com.,* 63 Cal.2d 65 [45 Cal.Rptr. 5, 403 P.2d 133].) Moreover, prior adjudication of specific injuries did not preclude a finding of cumulative injury during a period overlapping the specific injuries. (*Dow Chemical Co.* v. *Workmen's Comp. App. Bd.,* 67 Cal.2d 483 [62 Cal.Rptr. 757, 432 P.2d 365].)" *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd. (Burris)* (1969) 1 Cal.App.3d 812, 817-818 [82 Cal.Rptr. 102].)

In 1968 the California Legislature enacted Labor Code sections 3208.1 and 3208.2 and amended Labor Code section 5303; all to be effective on January 1, 1969. The Legislature Comment with respect to the enactment of these provisions stated the purpose was to proscribe the merger of specific injuries and continuous trauma injuries. (*Aetna Cas. & Surety Co.* v. *Workmen's Comp. Appeals Bd. (Coltharp)* (1973) 35 Cal.App.3d 329, 334 [110 Cal.Rptr. 780].) The legislation is not retroactive. (*State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.App.3d 812.) Where the continuous trauma period ends after January 1, 1969, specific injuries before January 1, 1969, can merge into a continuous trauma, but specific injuries after January 1, 1969, cannot so merge. (*Aetna Cas. & Surety Co.* v. *Workmen's Comp. Appeals Bd. (Coltharp) supra,* 35 Cal.App.3d at pp. 334-336.)

the heart attack. Thus, under section 5500.5, subdivision (a), the heart disability, temporary disability and need for medical treatment related to the cumulative trauma ending October 1971 would be limited to employers during the period October 1966 to October 1971. The "date of injury" would still be in 1975, but the "last date of hazardous exposure" as to the first continuous trauma injury would be earlier in time and hence October 1971 would mark the end of the first injury.

Nothing in section 5500.5 prohibits this analysis. Section 5500.5 does not define what a cumulative trauma or occupational disease is—rather section 5500.5 is directed at defining what employers are liable for such injuries.[10]

The matter is remanded to the board for consideration of the court's opinion herein and such further proceedings and modification of the board's decision as may be indicated.

Thompson, J., and Hanson, J., concurred.

A petition for a rehearing was denied January 2, 1979, and petitioner's application for a hearing by the Supreme Court was denied February 1, 1979.

---

[10]The version of section 5500.5 after the 1977 amendments provides that "liability for such cumulative injury or occupational disease shall not be apportioned to prior *or subsequent* years; . . ." (Italics added.) Prior to the 1977 amendments section 5500.5 only stated that there was no apportionment to "prior years" of employment. The 1977 amendments now also prevents apportionment to "subsequent years." Our analysis would not be inconsistent with this added language if the 1977 amendments applied to this case. "Subsequent years" does not refer to subsequent injuries (either specific injury, cumulative injury or occupational disease) but only the situation where as to the *same* cumulative injury or occupational diseases the "date of injury" under section 5412 occurs prior to the last date of hazardous exposure. This occurs when the injured obtains knowledge of the industrial relationship (thus establishing the "date of injury") and files his claim but continues to work in the employment exposing him to the continuing industrial injury. Thus, this language of no apportionment to "subsequent years" fixes the period of liability and prevents the period of liability from continually changing as to the same injury.